[No. B222837. Second Dist., Div. Three. Jan. 13, 2011.]

In re FRANK R. et al., Persons Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY
SERVICES, Plaintiff and Respondent, v.
FRANK R., Defendant and Appellant.

COUNSEL

Janette Freeman Cochran, under appointment by the Court of Appeal, for Defendant and Appellant.

Andrea Sheridan Ordin, County Counsel, James M. Owens, Assistant County Counsel, and O. Raquel Ramirez, Deputy County Counsel, for Plaintiff and Respondent.

OPINION

ALDRICH, J.—

## INTRODUCTION

Frank R. (father) appeals from the order of the juvenile court terminating his parental rights to nine-year-old twins Frank and Teena. (Welf. & Inst. Code, § 366.26.)[1] He contends that the court denied him due process by terminating his rights without a finding he was unfit. We agree and reverse the order.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The children are detained.*

The children were residing with their mother at a sober living facility in December 2007 when mother was arrested and charged with child cruelty for abusing Teena.[2] Father's whereabouts were unknown and so the juvenile court detained the children and placed them in foster care in San Bernardino County where they remained for most of their dependency.

The Los Angeles County Department of Children and Family Services (the Department) located father living in a motel. Father had no stable housing. He was trying to obtain subsidized housing. Father was unemployed and received Supplemental Social Security Income benefits because of a work-related injury, some of which income was sent directly to the twins. Father had an arrest history prior to 1996, including numerous convictions for being under the influence of a controlled substance. He still drinks alcohol, but claims not to be an alcoholic.

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise noted.

[2] Mother is not a party to this appeal.

The juvenile court declared father a presumed father and appointed counsel for him. Father stated that he wanted to reunify with the children and so the Department recommended that the court award him reunification services.

> 2. *The adjudication and disposition; Father asks to be dismissed from the petition, does not request custody of the twins, and does not want reunification services.*

The Department filed a petition against mother alleging abuse and neglect of the twins (§ 300, subds. (a), (b) & (j)), and against father alleging failure to provide for the children (§ 300, subds. (b) & (g)).

The juvenile court sustained the petition as to mother and declared the children dependents. Father submitted to the court's jurisdiction but requested he be dismissed from the petition. Although the Department objected on the ground father knew about mother's persistent drug problem but did nothing to protect the children from her, its petition did not allege father's failure to protect. The court found the failure-to-provide allegations to be untrue and dismissed them as to father. Accordingly, father was nonoffending.

As for the disposition, father did not want custody of the twins because he was living in a motel, promising that when he obtained appropriate housing, he would file a section 388 petition to request custody of the twins. As for reunification services, father requested through his attorney that the court not order a case plan for him. The court did not require father to enroll in any parenting or other programs, but awarded him reasonable, unmonitored day visits so that he could obtain bus passes from the Department. The court stated, "I would like [father] to visit with the children on a regular basis and be a part of their lives."

Proceeding as to mother only, because she was awarded reunification services, the juvenile court ordered the twins removed from her custody, after finding by clear and convincing evidence that substantial danger existed to the children's physical health or emotional state and there was no reasonable means to protect them without removal. (§ 361, subd. (c)(1).)

> 3. *Father's conduct during the dependency period.*

Over the ensuing two years of the dependency, father's visits and telephone contact with the twins were irregular and infrequent. There were long periods

of time without contact at all. His last visit with the children was three months before the section 366.26 hearing. Nor did father contact the Department much to inquire about the twins' well-being or request custody.

Father denied that visitation posed a problem for him despite the distance to the twins' placement. He also claimed that transportation was difficult and repeatedly asked the court to order the Department to provide him a bus pass. The court made that order numerous times.

The Department obtained bus passes, but father never came to pick them up. The Department's reports reflect only one call from father about transportation funds in September 2008. In response, the social worker submitted a bus pass request and then left a message for father to call to arrange to obtain it. After the social worker's second such message went unreturned, the social worker sent the bus pass back. Father did not thereafter call the Department to arrange to obtain the pass. In addition to transportation aid, the Department arranged for the foster mother to meet father halfway or at the Department's offices.

Father testified that the reason he did not visit the twins more was "financial," and this penury prevented him from traveling to San Bernardino County where the twins were living. He testified that the Department never provided him with bus passes and never called him despite his repeated messages to the social worker requesting funds for transportation.

Nor did father ever seek custody of the children. He was living in a motel during the entire dependency. He informed the court in August 2008 that he had applied for low-income housing, and learned there was a minimum four-month wait. Although he contacted the Department in the spring of 2009 to report that he was looking for housing, he never asked for the Department's help obtaining a place to live.

At the six-month review hearing (§ 366.21, subd. (e)), the court reiterated that father was both nonoffending and not requesting custody of the children. At the 12-month review hearing (§ 366.21, subd. (f)), the court summarized that father was not offered reunification services and was not requesting placement.

Father informed the Department he did not want the children to be adopted. At the section 366.26 hearing on March 3, 2010, the juvenile court terminated father's and mother's parental rights. Father appealed.

## DISCUSSION

*Due process requires a finding of unfitness or detriment by clear and convincing evidence before parental rights may be terminated and the juvenile court here never made the requisite finding as to father.*

In *In re Gladys L.* (2006) 141 Cal.App.4th 845 [46 Cal.Rptr.3d 434], another division of this district Court of Appeal set forth the appropriate legal framework: "Parents have a fundamental interest in the care, companionship, and custody of their children. (*Santosky v. Kramer* (1982) 455 U.S. 745, 758 [71 L.Ed.2d 599, 102 S.Ct. 1388] . . . .) *Santosky* establishes minimal due process requirements in the context of state dependency proceedings. 'Before a State may sever completely and irrevocably the rights of parents in their natural child, due process requires that the State support its allegations *by at least clear and convincing evidence.*' [Citation.] 'After the State has established parental unfitness at that initial proceeding, the court may assume at the *dispositional* stage that the interests of the child and the natural parents do diverge.' [Citation.] 'But until the State proves parental unfitness, the child and his parents share a vital interest in preventing erroneous termination of their natural relationship.' [Citation.]

"California's dependency system comports with *Santosky*'s requirements because, by the time parental rights are terminated at a section 366.26 hearing, the juvenile court *must* have made prior findings that the parent was unfit. (*Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 254 [19 Cal.Rptr.2d 698, 851 P.2d 1307].) 'The number and quality of the judicial findings that are necessary preconditions to termination convey very powerfully to the fact finder the subjective certainty about parental unfitness and detriment required before the court may even consider ending the relationship between natural parent and child.' [Citation.] The linchpin to the constitutionality of the section 366.26 hearing is that prior determinations ensure '*the evidence of detriment is already so clear and convincing that more cannot be required without prejudice to the interests of the adoptable child, with which the state must align itself.*' [Citation.]" (*In re Gladys L., supra*, 141 Cal.App.4th 845, 848, some italics added; accord, *In re G.S.R.* (2008) 159 Cal.App.4th 1202, 1211 [72 Cal.Rptr.3d 398]; *In re P.A.* (2007) 155 Cal.App.4th 1197, 1210–1211 [66 Cal.Rptr.3d 783].)

With respect to the necessary finding of unfitness, "California's dependency scheme no longer uses the term 'parental unfitness,' but instead requires the juvenile court make a finding that awarding custody of a dependent child to a parent would be detrimental to the child. [Citation.]" (*In re P.A., supra*, 155 Cal.App.4th at p. 1211, citing *In re Dakota H.* (2005) 132 Cal.App.4th 212, 224, fn. 3 [33 Cal.Rptr.3d 337].) In *In re P.A.*, we held

that findings of detriment by clear and convincing evidence can provide an adequate foundation for an order terminating parental rights, if supported by substantial evidence. (*In re P.A., supra,* at pp. 1212–1213.) There, the required findings of detriment were made by the necessary standard where the juvenile court found at the disposition hearing "by 'clear and convincing evidence there exist[ed] a substantial danger to the children and [there was] no reasonable means to protect them without removal from *the parents' custody*' " and removed the children from the parents' custody. (*Id.* at p. 1212, some italics added.)

■ At least two cases suggest that a finding of a parent's unfitness may not be had absent the sustaining of a petition against that parent, even where there is a record of detriment if the child were not removed from that parent's custody. (See *In re Gladys L., supra,* 141 Cal.App.4th at pp. 848–849; see also *In re G.S.R., supra,* 159 Cal.App.4th at p. 1214, fn. 7.) However, we have held that "a *jurisdictional* finding is not an adequate finding of parental unfitness because it is made by a preponderance of the evidence. [Citations.] Therefore, even if the dependency petition had alleged [the father's] unfitness, the order sustaining the petition would [be] inadequate, by itself, to terminate [the father's] parental rights without a subsequent finding of detriment by clear and convincing evidence." (*In re P.A., supra,* 155 Cal.App.4th at p. 1212; accord, *In re A.S.* (2009) 180 Cal.App.4th 351, 361 [102 Cal.Rptr.3d 642].)

■ Here, the juvenile court failed to meet the *Santosky* requirements and overlooked the safeguards established by the California dependency scheme because the court never made a finding father was unfit, having never made a finding of detriment by clear and convincing evidence with respect to father. At the jurisdiction hearing, father was deemed a nonoffending parent. Hence, the juvenile court never even made the initial finding of unfitness as required by *In re Gladys L.* and *In re G.S.R.*

More important, when the juvenile court was called upon to make the requisite finding of detriment by clear and convincing evidence in order to remove the children from a parent's custody (*In re P.A., supra,* 155 Cal.App.4th at p. 1212; § 361, subd. (c)(1)),[3] it made no such finding as to

---

[3] Section 361, subdivision (c) reads in relevant part, "A dependent child may not be taken from the physical custody of his or her parents or guardian or guardians with whom the child resides at the time the petition was initiated, unless the juvenile court finds *clear and convincing evidence* of any of the following circumstances listed in paragraphs (1) to (5), inclusive, and, in an Indian child custody proceeding, paragraph (6):

"(1) There is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without *removing the minor from the minor's parent's or guardian's physical custody.*" (Italics added.)

father because he was noncustodial and did not request custody. Rather, the court stated at the hearing that it was proceeding as to mother only and then found in the singular that, "clear and convincing evidence . . . [that] Substantial danger exists to the physical health of minor(s) and/or minor(s) is suffering severe emotional damage, and there is no reasonable means to protect without removal from parent's or guardian's physical custody." (Italics added.) At no time during the dependency did the court ever make the requisite detriment finding by clear and convincing evidence as to father. (§ 361, subd. (c)(1).)

Father did not forfeit his right to contest the termination of his parental rights by failing to act sooner or to file a petition for extraordinary writ from the setting of the section 366.26 hearing (§ 366.26, subd. (*l*)). The juvenile court did not duly advise father of his writ rights, with the result he is entitled to challenge the merits of the setting order on appeal from the termination order. (*Jennifer T. v. Superior Court* (2007) 159 Cal.App.4th 254, 260 [71 Cal.Rptr.3d 293].) The court never notified father of his writ rights exactly because in its view, it never ordered reunification services for father, and so such services were never terminated at the hearing setting the section 366.26 hearing. In any event, we are reluctant to enforce the waiver rule when it conflicts with due process. (*In re Gladys L., supra*, 141 Cal.App.4th at p. 849.)

Father argues that the only basis for an unfitness finding was his lack of housing and inability to afford transportation to visit his children, and that "poverty alone, even abject poverty resulting in homelessness, is not a valid basis for assertion of juvenile court jurisdiction." (*In re G.S.R., supra*, 159 Cal.App.4th 1202, 1212.) The Department counters that father's unfitness lies in his failure to protect the twins from mother by allowing them to live with her when he knew she was abusing drugs; father's sporadic visits with the twins and lack of telephone contact during the dependency, and his failure to diligently attend to the children's educational needs, all of which supports the juvenile court's finding that father lacked motivation and commitment to the twins. However, although there may be valid bases for the juvenile court to make a finding of father's unfitness, the court never made that finding, let alone by the required clear and convincing standard. We may not make that finding here or infer such a finding. "[A] finding of detriment . . . asks this court to act as petitioner and fact finder, thereby denying [father] an opportunity for notice of specific charges and an opportunity to respond to the charges against him. [Citation.]" (*In re Gladys L., supra*, 141 Cal.App.4th at pp. 848–849.) For the foregoing reasons, due process prohibited the termination of father's parental rights.

## DISPOSITION

The order terminating Frank R.'s parental rights is reversed. The case is remanded to the juvenile court to determine whether, based upon the facts as they exist, a finding of unfitness may be made by clear and convincing evidence.

Croskey, Acting P. J., and Kitching, J., concurred.