Filed 10/31/13  In re K.L. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re K.L., a Person Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY, <br><br>     Plaintiff and Respondent, <br><br>       v. <br><br> M.H., <br><br>     Defendant and Appellant. | G048403 <br><br> (Super. Ct. No. DP021315) <br><br> O P I N I O N |

Appeal from a postjudgment order of the Superior Court of Orange County, Gary Bischoff, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Roni Keller, under appointment by the Court of Appeal, for Defendant and Appellant.

Nicholas S. Chrisos, County Counsel, Karen L. Christensen and Aurelio Torre, Deputy County Counsel, for Plaintiff and Respondent.

\*        \*        \*

M.H. (mother) appeals the juvenile court's order terminating her parental rights. (See Welf. & Inst. Code, § 366.26.)[1] Mother contends: (1) the court violated her due process rights because she was not an unfit parent; and (2) the court's finding that dependent K.L. (daughter) was adoptable was not supported by substantial evidence. We reject both arguments and affirm. As to her due process claim, mother *stipulated* to a dispositional finding by clear and convincing evidence that to vest custody of daughter with mother would be detrimental to daughter. Mother did not claim that the court's finding at the dispositional hearing was in error until this appeal of the court's order terminating her parental rights; she did not even raise this argument at the section 366.26 hearing. Although the record does not disclose evidence of outrageously deficient parenting by mother, it would upend the functioning of the dependency process and violate basic principles of appellate review were we to allow her to press the reset button at this late stage.

## FACTS

We note initially that the record consists almost entirely of the Orange County Social Services Agency's (SSA) reports and argument from counsel. No witnesses were called to testify at the section 366.26 hearing. Indeed, though this case was initiated in June 2011 and featured 11 hearings, the record is devoid of testimony from any witnesses. Moreover, there is no indication in the record that mother filed any previous appeals or writ petitions in this case.

---

[1] All statutory references are to the Welfare and Institutions Code.

*Family History*

Mother's relatively negligible criminal history includes convictions in 2001 for acts of vandalism, a bench warrant for a probation violation in 2002, and a 2003 arrest (but subsequent dismissal of charges for lack of sufficient evidence) for assault, battery, and criminal threats. Mother also has a history of "drug issues." D.L.'s (father) much more extensive criminal history includes burglary convictions, driving under the influence convictions, and a string of arrests for drug and property crime offenses. Father has "an unresolved substance abuse problem."

Mother and father lived together in California from 2003 to 2006. Daughter was born in 2004 to mother and father. Mother and father never married and ended their relationship in 2006.

Mother moved to Louisiana in 2006 to live with maternal grandparents, a son from a previous relationship, and daughter. The family law court (in Orange County) awarded mother and father joint legal custody of daughter, with mother awarded primary physical custody and father awarded visitation rights in Louisiana. Father visited daughter in Louisiana twice. According to father, on his second visit, he learned that mother had not been home for a week. Father therefore took daughter home to California with him. Mother characterizes this incident as a "kidnapping," although nothing in the record suggests it was reported to police or treated as a crime by law enforcement authorities. Indeed, in January 2009 the family law court awarded father sole legal and physical custody of daughter, with mother's visitation at the discretion of father. Mother failed to participate in the custody proceedings.

Prior to the instant petition, there were eight child abuse referrals and five child abuse reports pertaining to the various parties (including referrals or reports pertaining to mother only, father only, or both parents). An April 2003 allegation of neglect by mother was substantiated with regard to her supervision of her son. Most of the accusations were deemed either unfounded or inconclusive.

3

*Detention and Dependency Petition*

In May 2011, daughter was taken into protective custody because father was arrested for robbery. Father was incarcerated and the whereabouts of mother were unknown to SSA. SSA filed a dependency petition on June 2, 2011. In alleging a failure to protect daughter and the lack of provision for support of daughter, SSA cited father's incarceration, criminal history, and history of substance abuse. SSA also cited its inability to locate mother and her failure to maintain regular visitation with daughter.

Daughter was placed in the home of her paternal grandmother. Before the jurisdictional hearing, mother spoke to SSA by telephone, reporting that she lived and worked in Louisiana and wished to have custody of daughter. Mother denied that her whereabouts were unknown to father, and claimed that she was thwarted in her efforts to visit daughter by father. Mother confirmed she had drug issues before 2006.

The social worker opined that "mother [was] not available to provide care and support for the child, because she [was] living in Louisiana." The social worker cited mother's lack of contact with daughter for three years and her history of drug abuse as additional obstacles. But the social worker indicated an assessment of mother's home would be requested pursuant to the Interstate Compact for Placement of Children.

Father pleaded no contest to an amended version of the petition. Mother (appearing by telephone) submitted to the issues based solely on the information in the SSA reports, thereby waiving her right to trial on the allegations in the petition. The court found the allegations of the amended petition to be true by a preponderance of the evidence. Both parents subsequently stipulated to a disposition order whereby daughter was declared a dependent child of the court (§ 360, subd. (d)). Both parents also stipulated to a finding by clear and convincing evidence that to vest custody with either parent would be detrimental to daughter (§ 361, subd. (c)). At the dispositional hearing, the court found by clear and convincing evidence that "to vest custody with the parent

4

would be detrimental to the child and to vest custody with [SSA] is required to serve the child's best interest."

*Review Hearings*

At the six-month review hearing, SSA recommended that daughter remain a dependent child of the court because the return of daughter to parents would create a substantial risk of detriment to daughter. Mother's cooperation with the case plan was described as minimal. An addendum report included an evaluation of mother's home by a Louisiana social worker. The evaluation included certain troubling information about mother: she cited her religion as a reason she could not participate in counseling, her prior drug use included a five-year addiction to crystal methamphetamine, she was dependent for many of her living expenses on a boyfriend who was not cleared for living with daughter, she was dishonest about the residence of her boyfriend, she did not have a stable employment or residence history, and she did not have any positive references (one reference cited by mother confidentially stated "there is a lot of partying and drinking and drug usage in the home"). The court agreed with SSA's findings and recommendation to continue the dependency case.

At the 12-month review hearing, the court again found that return of daughter to either parent would create a substantial risk of detriment to daughter. The court terminated reunification services to mother and father and ordered that a section 366.26 hearing be held within 120 days. The court cited mother's failure to participate in regular drug testing and the lack of a suitable home as determined by social worker investigations. Mother's attorney, after reviewing the file, "determined there are no writable issues."

*Section 366.26 Hearing*

Mother apparently was present in the courtroom on the date of the section 366.26 hearing, but she departed before the hearing. Mother's counsel made a statement on behalf of mother: "The mother just wanted to express that she loves her child very much. And while she wishes she could have the child in her care and custody, she understands the circumstances and situation of the case as it stands today and very much desires what is best for the child. And based on that . . . and knowing that she had the right and opportunity to have a hearing today, [mother waives] that right to present any additional evidence." Neither mother nor father made any objections to any of the material appearing in the SSA reports.

The SSA report provided information regarding the adoptability of daughter, almost nine years old at the time of the preparation of the report. Daughter remained in the custody of paternal grandmother. Daughter stood four feet, four and one half inches tall and weighed 89 pounds. Daughter was diagnosed with attention deficit hyperactivity disorder (ADHD) and was prescribed Adderall to address this condition. Daughter was in third grade, where she received services through an individualized education program (IEP) based on her ADHD diagnosis. She "is participating in developmentally appropriate extracurricular and social activities. [She] participates in an after school program at school. [¶] The child enjoys spending time with her family, going to the movies, also enjoys watching television and playing with her cousins. [¶] There are no developmental concerns at this time." Daughter "does not appear to exhibit any behavioral or emotional problems at this time." Daughter "appears not to have a learning disability or other special education need."[2] SSA concluded, "[I]t is probable

_____

[2] To be consistent with the rest of the report, this statement suggests that ADHD (in and of itself) is not a learning disability and the receipt of an IEP does not necessarily mean a student has a need for special education. These are classification and terminology issues that are beyond the scope of this opinion.

that the child will be adopted, but the child is difficult to place for adoption, because the child is older than 7 years and diagnosed" with ADHD.  Paternal grandmother stated she was willing to adopt daughter, but did not comply with initial requests from SSA to begin an adoption home study.  By the time of the hearing, the adoption home study was "in progress" but delayed by various scheduling difficulties.

The court, having read and considered all the materials before it, found "by clear and convincing evidence that it is likely that the child will be adopted; the child is adoptable as a result of the court order; that the parental rights of the child's parents . . . be terminated pursuant to [section] 366.26."  "I find a termination of parental rights is not detrimental to the child, and in fact termination is in the child's best interest."

DISCUSSION

At a section 366.26 hearing, "the court, in order to provide stable, permanent homes for [dependent] children, shall review the report . . . , shall indicate that the court has read and considered it, shall receive other evidence that the parties may present, and then shall make findings and orders in the following order of preference:  [¶] (1) Terminate the rights of the parent or parents and order that the child be placed for adoption . . . ."  (*Id*., subd. (b).)  "If the court determines . . . by a clear and convincing standard, that it is likely the child will be adopted, the court shall terminate parental rights and order the child placed for adoption.  The fact that the child is not yet placed in a preadoptive home nor with a relative or foster family who is prepared to adopt the child, shall not constitute a basis for the court to conclude that it is not likely the child will be adopted.  A finding . . . that the court has continued to remove the child from the custody of the parent or guardian and has terminated reunification services . . . shall constitute a sufficient basis for termination of parental rights."  (*Id*., subd. (c)(1).)

7

*Mother Was Accorded Due Process*

Mother first claims an error of constitutional dimension occurred because, in her view, her parental rights were terminated even though she was not an unfit parent. Due process requires that, prior to the termination of parental rights, a finding of parental unfitness be made by clear and convincing evidence. (*In re T.G.* (2013) 215 Cal.App.4th 1, 14.)

"California's dependency scheme no longer uses the term 'parental unfitness,' but instead requires the juvenile court make a finding that awarding custody of a dependent child to a parent would be detrimental to the child." (*In re P.A.* (2007) 155 Cal.App.4th 1197, 1211.) "California's dependency system comports with [due process] because, by the time parental rights are terminated at a section 366.26 hearing, the juvenile court *must* have made prior findings that the parent was unfit. [Citation.] 'The number and quality of the judicial findings that are necessary preconditions to termination convey very powerfully to the fact finder the subjective certainty about parental unfitness and detriment required before the court may even consider ending the relationship between natural parent and child.' [Citation.] The linchpin to the constitutionality of the section 366.26 hearing is that prior determinations ensure 'the evidence of detriment is already so clear and convincing that more cannot be required without prejudice to the interests of the adoptable child, with which the state must align itself.'" (*In re Gladys L.* (2006) 141 Cal.App.4th 845, 848.)

"[I]n order to terminate parental rights [at a section 366.26 hearing], the court need only make two findings: (1) that there is clear and convincing evidence that the minor will be adopted; and (2) that there has been a previous determination that reunification services shall be terminated." (*Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 249-250.) "[T]he purpose of the section 366.26 hearing is not to accumulate further evidence of parental unfitness and danger to the child, but to begin the task of finding the child a permanent alternative family placement." (*Id*. at p. 253.)

8

Occasionally, an aberration in the process occurs and a juvenile court terminates both parents' rights even though findings of detriment were only made with regard to one of the parents. In such circumstances, the parent who was never explicitly found to be unfit is entitled to a reversal of the section 366.26 order terminating parental rights and a new hearing to determine fitness. (See *In re T.G.*, *supra*, 215 Cal.App.4th at p. 20 ["a court may not terminate a nonoffending, noncustodial mother's or presumed father's parental rights without finding, by clear and convincing evidence, that awarding custody to the parent would be detrimental"]; *id*. at p. 24 [reversing order terminating parental rights and remanding for fitness hearing]; *In re Frank R.* (2011) 192 Cal.App.4th 532, 535, 538-540 [father disavowed interest in custody at dispositional hearing and avoided detriment finding, then opposed termination of parental rights]; *In re Gladys L.*, *supra*, 141 Cal.App.4th at pp. 847-849 [because father disappeared for three years, court neglected to make findings of detriment against him prior to terminating parental rights].)

But these cases are inapposite to the circumstances presented here. Mother's briefs ignore the finding of unfitness by clear and convincing evidence that was stipulated to by mother and made by the court at the dispositional hearing. (See *In re Dani R.* (2001) 89 Cal.App.4th 402, 405-406 [parent's stipulation to detriment findings made by clear and convincing evidence "amount to an unqualified admission that the initial jurisdictional findings and dispositional order are supported by substantial evidence"].) Mother received due process. (See *In re P.A.*, *supra*, 155 Cal.App.4th at pp. 1211-1212 [rejecting due process claim because of dispositional finding of detriment by clear and convincing evidence].) Mother's unfitness to care for daughter was reconfirmed at the two review hearings conducted by the court. (See § 366.21, subds. (e), (f).) Mother did not seek appellate review of any of these findings that occurred earlier in the case.

9

To the extent mother is belatedly trying to appeal these prior findings of detriment (or, as she suggests in her brief, to fault the court for not analyzing her request for custody at the dispositional hearing as a noncustodial parent under § 361.2), such claims are untimely and therefore waived or forfeited. Mother "did not appeal the disposition order or any order made between then and the [section 366].26 hearing. Nor did she petition for writ review, the exclusively prescribed vehicle for appellate review of an order setting a .26 hearing." (*In re Janee J.* (1999) 74 Cal.App.4th 198, 206; *id.* at pp. 210-214 [challenges to detriment findings are waived].) Typically, "an appellate court in a dependency proceeding may not inquire into the merits of a prior final appealable order on an appeal from a later appealable order . . . ." (*In re Meranda P.* (1997) 56 Cal.App.4th 1143, 1151.) Additionally, objections must typically be made at the trial court level, rather than for the first time on appeal. (*In re Riva M.* (1991) 235 Cal.App.3d 403, 411-412.) Mother did not appeal any of the detriment findings in this case or raise her current claim at the section 366.26 hearing. To the extent she seeks review of the dispositional hearing orders or review hearing orders, mother's claim is waived and/or forfeited.

*Substantial Evidence Supports Adoptability Finding*

Mother also challenges the court's finding that daughter was likely to be adopted. Mother did not forfeit her right to appeal this determination by her failure to contest the adequacy of the SSA reports or submit additional evidence at the section 366.26 hearing. (*In re Gregory A.* (2005) 126 Cal.App.4th 1554, 1560-1561.) But the evidentiary record is necessarily limited to the information provided by SSA to the court. Mother did not call her own witnesses or cross-examine the individuals who prepared the SSA reports relied on by the court for its findings.

"The juvenile court may terminate parental rights only if it determines by clear and convincing evidence that it is likely the child will be adopted within a

reasonable time." (*In re Carl R.* (2005) 128 Cal.App.4th 1051, 1060.) "'In reviewing the juvenile court's order, we determine whether the record contains substantial evidence from which a reasonable trier of fact could find clear and convincing evidence that [the child] was likely to be adopted within a reasonable time. [Citations.]' [Citations.] We give the court's finding of adoptability the benefit of every reasonable inference and resolve any evidentiary conflicts in favor of affirming." (*In re Gregory A.*, *supra*, 126 Cal.App.4th at pp. 1561-1562.) "Although a finding of adoptability must be supported by clear and convincing evidence, it is nevertheless a low threshold: The court must merely determine that it is 'likely' that the child will be adopted within a reasonable time. [Citation.] We review that finding only to determine whether there is evidence, contested or uncontested, from which a reasonable court could reach that conclusion. It is irrelevant that there may be evidence which would support a contrary conclusion." (*In re K.B.* (2009) 173 Cal.App.4th 1275, 1292.)

"A child's young age, good physical and emotional health, intellectual growth and ability to develop interpersonal relationships are all attributes indicating adoptability." (*In re Gregory A.*, *supra*, 126 Cal.App.4th at p. 1562.) "'"[A] prospective adoptive parent's willingness to adopt generally indicates the minor is likely to be adopted within a reasonable time either by the prospective adoptive parent *or by some other family*."'" (*Ibid.*)

"If the child is considered generally adoptable, we do not examine the suitability of the prospective adoptive home. [Citation.] However, where the child is deemed adoptable based solely on the fact that a particular family is willing to adopt him or her, the trial court must determine whether there is a legal impediment to adoption." (*In re Carl R.*, *supra*, 128 Cal.App.4th at p. 1061.)

Here, the court found daughter to be generally adoptable notwithstanding her age (nine) and health issue (ADHD). Daughter does not suffer from such serious mental and intellectual limitations that a finding of adoptability must hinge on the ability

11

of the prospective adoptive grandmother to complete the adoption.  (Cf. *In re Carl R.*, *supra*, 128 Cal.App.4th at pp. 1058, 1061-1062 [child with cerebral palsy, severe quadriparesis, a seizure disorder, and a severe psychomotor delay, who required "total care," was not generally adoptable and a finding of "adoptability" necessarily required finding a particular family was willing and able to legally adopt the child].)  Instead, the court could reasonably infer that daughter was a healthy child capable of taking part in age appropriate activities.  In addition, the court could reasonably conclude paternal grandmother intends to pursue adoption of daughter, an additional indication that daughter is likely to be adopted (whether by grandmother or some other family).  There is substantial evidence in the record supporting the court's finding.

DISPOSITION

The postjudgment order is affirmed.

IKOLA, J.

I CONCUR:

FYBEL, J.

12

MOORE, ACTING P. J., Concurring.

Counsel for the mother presented a very emotional plea to this court in oral argument, even accusing the Orange County Department of Social Services of assisting in kidnapping K.L. from Louisiana.  However, in the juvenile court, at the dispositional hearing, mother's counsel stipulated to a finding that to vest custody with either parent would be detrimental to K.L.  Additionally, no argument regarding a due process right to effective assistance of counsel was raised in a writ for extraordinary relief prior to the Welfare and Institutions Code section 366.26 hearing, and is, therefore, now untimely, even had it been raised in the briefs here.  (*In re Meranda P.* (1997) 56 Cal.App.4th 1143, 1150-1151.)  Accordingly, I concur with the majority opinion.

MOORE, ACTING P. J.

1