Filed 3/22/21  In re D.L. CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| In re D.L., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B307600 (Super. Ct. No. 18JV00473) (Santa Barbara County) |
| SANTA BARBARA COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>E.T.,<br><br>    Defendant and Appellant. | |

E.T. (Father) appeals order denying his petition under Welfare and Institutions Code[1] section 388 and terminating his parental rights (§ 366.26).  We affirm.

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise stated.

FACTS

On November 29, 2018, D.L., then seven years old, was detained, along with her two sisters, by Child Welfare Services (CWS). CWS received a referral because D.L. had missed a lot of school, and when school officials went to D.L.'s home, they found Mother groggy and unresponsive. The children had been sleeping on blankets on the floor, the home was littered with dirty diapers, and numerous safety hazards were within reach of the children. CWS filed a juvenile dependency petition on December 3, 2018, involving all three children. Because D.L.'s siblings have different fathers, only the petition as it relates to D.L. is subject to this appeal.

*Detention Hearing*

Mother provided the correct name of D.L.'s father (Father) to CWS. Mother stated that Father did not have a relationship with D.L., and that she had no contact with him.

The juvenile court found that the children came within section 300; there is a substantial risk of physical and emotional damage; and there is no reasonable means to protect them without removing them from their parents' custody.

*Jurisdiction and Disposition*

Mother appeared at the jurisdiction and disposition hearing in January 2019. Father did not appear. CWS submitted a due diligence declaration showing CWS's attempts to contact Father. The attempts were unsuccessful. According to Mother, the last time Father saw D.L. was about four years ago.

The juvenile court found the allegations of the petition to be true, and ordered Mother to participate in family reunification services.

*Six-Month Review*

A six-month review hearing was held in July 2019. CWS filed another due diligence declaration showing Father could not be located. The juvenile court ordered another six months of services for Mother.

*First Contact with Father*

On December 10, 2019, Father contacted CWS by telephone. He told the social worker that Mother would not tell him what was happening with the case. He wanted an update and was interested in getting D.L. into his care. The social worker gave him information on the upcoming 12-month review and on contacting the juvenile court. The social worker took Father's phone number and address.

*12-Month Review*

A 12-month review hearing was held in January 2020. Father was notified of the hearing by telephone, but did not appear. CWS incorrectly reported that it could not locate Father. The juvenile court terminated Mother's services and set the matter for a section 366.26 hearing in May 2020.

*Father's First Court Appearance*

In early April 2020, Mother was speaking on the telephone with a CWS worker. Mother said that Father was with her. Father told the social worker that he had returned to the United States from Mexico and wanted to see D.L.

CWS arranged for a hearing for an appointment of an attorney for Father. At the hearing the court appointed counsel for Father, but stated it would not rule on whether Father was a presumed father at that time. The court invited Father to schedule a hearing for that purpose prior to the section 366.26 hearing.

*Section 388 Request*

In August 2020, Father filed a request pursuant to section 388 to be elevated to presumed father status and to be provided reunification services. CWS and D.L.'s attorney objected to Father's presumed status and requested a contested hearing.

On August 12, 2020, the juvenile court held a hearing on Father's section 388 motion. The parties submitted on Father's presumed status, and the court found him to be the presumed father.

The juvenile court postponed its decision on reunification services for Father. The court asked the parties for briefing on the standard it must use in determining whether Father is entitled to services. The court wanted to know whether the best interest of the child is the standard.

*Hearing on Standard*

The parties agreed that the standard was the best interest of the child. At the hearing Father's counsel reiterated that "it comes down to whether or not it is in the best interest of the child."

The juvenile court found that Father had minimal contacts with the child and, given the late state of the proceedings, services would not be in the child's best interest.

*Section 366.26 Hearing*

At the section 366.26 hearing, Father again asserted that he had a beneficial relationship with D.L. The juvenile court terminated both parents' parental rights, and ordered a permanent plan of adoption.

4

DISCUSSION

I

*Detriment to the Child*

Father contends he was denied due process when the juvenile court terminated his parental rights without a finding of detriment to the child or parental unfitness.

Due process requires that a court may not terminate parental rights unless it makes a finding of parental unfitness or detriment to the child by clear and convincing evidence. (*Santosky v. Kramer* (1981) 455 U.S. 745, 769 [71 L.Ed.2d 599]; *Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 249.) Here the juvenile court made no such express finding.

CWS argues Father waived the argument. Father did not raise the issue in the juvenile court, and when the court asked for briefing on the correct standard, he told the court it was the best interest of the child.

Father cites *Hale v. Morgan* (1978) 22 Cal.3d 388, 394, for the proposition that application of the waiver rule must not be applied where due process forbids it. But that is not what *Hale* says. Instead, our Supreme Court said, "We find at least arguable merit in defendant's assertion that constitutional issues were . . . adequately raised below." (*Ibid*.) Here it is not even arguable that the issue was adequately raised below.

Father argues that we should exercise our discretion and consider the issue on appeal notwithstanding his failure to raise the issue in the juvenile court. But the matter goes beyond waiver; it was invited error. The juvenile court followed Father's assertion that the correct standard was the best interest of the child. A party cannot complain on appeal that the juvenile court

5

erred in doing what the party invited it to do. (*Jentick v. Pacific Gas & Electric Co.* (1941) 18 Cal.2d 117, 121.)

We decline to exercise our discretion in this case. The issue does not involve a pure question of law that we can finally resolve on appeal. At best, we could remand the matter to the juvenile court for further hearings. The case has been pending now for over two years. Childhood is short and stability is essential. D.L. has the prospect of being adopted along with her siblings, who are not related to Father. A remand for further hearings would delay the stability that D.L. needs.

Moreover, Father has no substantial relationship with D.L. The juvenile court found Father has had "minimal contact with the child." During D.L.'s short life, Father has been in prison and has been deported to Mexico. Father's contact has been limited to telephone calls. There is no evidence Father has made any effort to support D.L. financially. At this point it would be cruel to delay D.L.'s prospect of being adopted with her siblings in favor of a Father whom she does not know.

In any event, the error was harmless by any standard. Whether the juvenile court's finding is couched in terms of the best interest of the child or detriment to the child, the result is the same. It would be detrimental to the child to deny or delay D.L.'s opportunity to be adopted with her siblings to place her with a father she does not know.

II

*Notice Requirements*

Father contends the order terminating parental rights must be set aside because CWS failed to perform basic noticing requirements.

6

*(a) Notice of Right to Seek Writ Review*

When the court orders a hearing under section 366.26, the court must advise all parties that if a party wishes to preserve the right to review the order setting the hearing, the party is required to seek an extraordinary writ. (Cal. Rules of Court, rule 5.590(b).) If a party is not present when the court orders the hearing, the clerk of the court must advise the party by mail within 24 hours. (*Id*. at rule 5.590(b)(1).)

Father points out that his address was known to CWS by December 10, 2019, and the section 366.26 hearing was set on January 18, 2020.

But the clerk is only required to give notice to a party. CWS cites *In re Emily R.* (2000) 80 Cal.App.4th 1344, 1358, and *In re Joseph G.* (2000) 83 Cal.App.4th 712, 715, for the proposition that an alleged father is not a party to the dependency proceedings. CWS points out Father did not become a presumed father until August 12, 2020, at which point he became a party.

Father counters that CWS's argument was implicitly rejected in *In re J.W.-P.* (2020) 54 Cal.App.5th 298. But in *J.W.-P.*, the question was whether an alleged father had standing to appeal because he did not appear in the juvenile court in person. The court held that his appearance through his attorneys was sufficient. (*Id*. at p. 304.) The court simply assumed that an alleged father who appeared in the proceedings below was a party with standing to appeal. The court did not discuss the matter. A case is not authority for propositions not considered therein. (*State Farm Fire & Casualty Co. v. Pietak* (2001) 90 Cal.App.4th 600, 614.)

7

In any event, the penalty for the failure to seek review by writ is waiver of any issue that could have been raised. (§ 366.26, subd. (l)(1)(A).) Because Father had no standing to seek review by writ, CWS is not claiming he waived any issues.

*(b)  Section 316.2, Subdivision (b) Notice*

Section 316.2, subdivision (b) states that when a man is identified as an alleged father, he must be provided notice by mail that he is or could be the father of the child; that the child is subject to the dependency proceedings; and that the proceedings could result in the termination of parental rights and the adoption of the child. The notice must also include Judicial Council form JV-505. The form tells the alleged father what he must do to establish paternity, including his right to appointment of counsel.

On December 10, 2019, Father notified CWS by telephone of his claim to be D.L.'s father and gave CWS his address. Inexplicably CWS failed to send him the required notice and form.

CWS acknowledges the error. But it claims waiver. Father failed to raise the matter in the juvenile court and is raising it now for the first time on appeal. Ordinarily we will not consider matters raised for the first time on appeal. (*Algeri v. Tonini* (1958) 159 Cal.App.2d 828, 832.) For reasons previously stated, we decline to exercise our discretion to consider the matter.

In any event, the error was harmless. Father has the burden of showing prejudice from the error. (*Scheenstra v. California Dairies, Inc.* (2013) 213 Cal.App.4th 370, 403.) He must show that it is reasonably probable he would have obtained a more favorable result but for the error. (*In re Celine R.* (2003) 31 Cal.4th 45, 60-61.) Father concedes that errors in providing

notice are subject to this harmless error analysis. (Citing *In re A.D.* (2011) 196 Cal.App.4th 1319, 1325-1326.)

Father claims the error was prejudicial because with proper notice he could have elevated his paternity status to presumed father and petitioned for reunification services during the reunification period. A man is not entitled to reunification services if he does not obtain presumed father status during the reunification period. (*In re Zacharia D.* (1993) 6 Cal.4th 435, 453.)

Here Father first contacted CWS on December 10, 2019. Mother's services were terminated on January 28, 2020. Assuming notice had been sent to Father on December 10, 2019, Father makes no effort to show it is reasonably probable he would have been elevated to presumed father in the short period prior to the termination of services. That CWS and D.L.'s attorney initially objected to Father's status being elevated to presumed father and requested a contested hearing adds to the improbability.[2]

The dissent reads more into the majority opinion than is there. We do not speculate on how the trial court might rule on remand. Instead we point out that Father advanced no argument concerning any probability he could possibly prevail on remand. Nor did our opinion rely on section 361.5 subdivision (b)(12) because neither party raised the issue concerning Father's prison sentence which he admitted.

---

[2] Neither CWS nor D.L.'s attorney raised the issue of Father's prior robbery conviction as it related to his request for services. Father has admitted his prior robbery conviction. Reunification services need not be provided to a parent who has been convicted of a violent felony, including robbery. (§ 361.5, subd. (b)(12); Pen. Code, § 667.5, subd. (c)(9).)

The judgment is affirmed.

NOT TO BE PUBLISHED.



GILBERT, P. J.

I concur:



PERREN, J.

TANGEMAN, J.:

I respectfully dissent. Where a dependency appeal presents the purely legal question of whether the juvenile court applied the proper standards when terminating parental rights, appellate courts routinely decline to invoke the forfeiture rule. (See, e.g., *In re D.H.* (2017) 14 Cal.App.5th 719, 728 (*D.H.*); *In re T.G.* (2013) 215 Cal.App.4th 1, 13-14.) Application of the rule is "'not automatic.'" (*T.G.*, at p. 14.) "When a party raises an important constitutional argument like the one [F]ather raises here regarding his due process interest in the care and custody of his [daughter], we exercise our discretion to consider the argument on its merits." (*D.H.*, at p. 728.) I would exercise that discretion here.

All parties agree that the juvenile court employed the wrong standard when terminating Father's parental rights. (See *D.H.*, *supra*, 14 Cal.App.5th at pp. 730-731 [discussing proper standard].) And at no point during the proceedings below did the court make any findings regarding Father's unfitness as a parent. Unlike the majority, I do not think it proper for this court to act as a factfinder and cull the record for facts that would support such a finding. (Maj. opn. *ante*, at p. 6; see *D.H.*, at pp. 732-733.) While I agree that prompt resolution of this case is in the best interest of all involved—especially D.L.—remanding for further proceedings "is the only way to safeguard [Father's] rights as [D.L.'s] presumed father and ensure that he is afforded due process." (*In re Gladys L.* (2006) 141 Cal.App.4th 845, 849.)

I would reach the same conclusion regarding Father's challenge to the order setting the Welfare and Institutions Code

section 366.26[1] hearing.  Child Welfare Services (CWS) did not advise Father of the setting hearing, preventing him from seeking presumed father status and reunification services before Mother's services were terminated.  And unlike the majority, I do not believe it is a foregone conclusion that the juvenile court would necessarily have denied a request for reunification services based on Father's robbery conviction.  (Maj. opn. *ante*, at p. 9, fn. 2.)  Section 361.5, subdivision (b)(12), says that services *may* be denied to a parent convicted of a violent felony such as robbery, not that they *must* be denied.  As Father notes in his briefing, he suffered his conviction years before D.L.'s birth, and CWS showed no connection between it and any risk of harm to her.  I would thus permit the court below to decide whether to grant or deny Father's request for reunification services in the first instance. (*In re Frank R.* (2011) 192 Cal.App.4th 532, 539 [courts should be "reluctant to enforce the [forfeiture] rule when it conflicts with due process"].)

NOT TO BE PUBLISHED.


TANGEMAN, J.

---

[1] Statutory references are to the Welfare and Institutions Code.

2

Arthur A. Garcia, Judge

Superior Court County of Santa Barbara

———————————————

Jesse McGowan, under appointment by the Court of Appeal, for Defendant and Appellant.

Michael C. Ghizzoni, County Counsel, Lisa A. Rothstein, Deputy, for Plaintiff and Respondent.