Filed 7/22/21  In re A.C. CA1/4
Reposted with correct filed date

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re A.C., a Person Coming Under the Juvenile Court Law. | |
| ALAMEDA COUNTY SOCIAL SERVICES AGENCY,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>T.C.,<br><br>        Objector and Appellant. | A160956<br><br>(Alameda County Super. Ct. No. JD-029263-01) |

T.C. (mother) appeals from the juvenile court's order terminating her parental rights as to her daughter, A.C. (minor), at a hearing under Welfare and Institutions Code section 366.26.[1]  Mother argues the juvenile court's order violates due process because the court failed to find that returning the minor to mother's care would be detrimental to the minor.  We conclude mother has forfeited this argument by failing to raise it below.  We therefore affirm the juvenile court's order.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

1

## BACKGROUND

The minor was born in May 2008. In January 2010, maternal grandmother Linda W. (guardian) obtained a probate guardianship over the minor.[2] In January 2018, when the minor was nine years old and living with the guardian, the minor brought a bag of crack pipes to school that she had found at home. The minor reported that the guardian and other family members living with her abused drugs. The minor was then detained and the Alameda County Social Services Agency (agency) filed a dependency petition. At the detention hearing, the juvenile court appointed counsel for mother and found that continuing the minor in the home of the guardian or mother would be contrary to the minor's welfare.

At the combined jurisdiction/disposition hearing in May 2018, the juvenile court removed the minor from the guardian's custody, placed her in foster care, and ordered the agency to provide reunification services to the guardian. Mother had told the agency before the hearing that she did not want the guardian to care for the minor and opposed granting the guardian reunification services. Mother did not ask the agency for custody over the minor, and at the hearing, mother's counsel did not request reunification services for mother or placement of the minor with her.

Leading up to the six-month review hearing in November 2018, mother told the agency that she was unable to care for the minor and had concerns about the minor returning to the guardian's care. At the hearing, mother's counsel had not had contact with mother, so he did not ask for reunification

---

[2] The minor's maternal aunt was also appointed as co-guardian over the minor. However, the aunt ceased acting as guardian before this action arose, and the court eventually terminated the aunt's guardianship with the aunt's agreement. Proceedings related to the aunt are not relevant here.

services or placement of the minor with her. The juvenile court continued reunification services for the guardian.

In advance of the 12-month review hearing in July 2019, Mother again told the agency she was unable to care for the minor. At the hearing, the agency recommended that the court terminate the guardian's services and set a hearing under section 366.26 for termination of parental rights. Mother's counsel repeated that mother was unable to care for the minor. Mother's counsel also said mother was working on securing housing to possibly become a potential placement for the minor. However, mother did not request placement of the minor at that time and submitted on the agency's recommendation that the court set a hearing to terminate her parental rights. The court terminated the guardian's reunification services and set a section 366.26 hearing.

In August 2019, prior to the section 366.26 hearing, the agency submitted a report stating that the minor had been "steadfast" in her view that she did not want visitation with mother or other relatives, and that the minor had warned the child welfare worker not to be "manipulated" by her mother, whom the minor had "no desire" to visit. At an interim review hearing in September 2019, the court found that it was not in the minor's best interests to have visitation with mother.

At the first date of the section 366.26 hearing in October 2019, the court terminated the guardian's probate guardianship. It then continued the section 366.26 hearing, twice for the minor to consider adoption or placement with her biological father and once due to the COVID-19 pandemic. At the first several dates for the section 366.26 hearing, mother requested visitation to maintain her relationship with the minor but never contested the recommendation to terminate her parental rights. In advance of the final

date of the section 366.26 hearing in September 2020, the minor's adult sister said she wanted to adopt the minor, and mother told the agency that she supported that plan. At the hearing, however, mother for the first time contested the termination of her parental rights. She argued that the agency's report did not describe contact between mother and the minor because the agency had not allowed mother to visit with the minor, and the absence of visits prejudiced her by preventing her from maintaining her bond with the minor. The juvenile court found no deficiencies in the agency's report and that visitation had been adequate in light of the minor's desires not to visit with mother. The court therefore terminated the parental rights of mother and the minor's biological father. The court set a permanent plan of adoption for the minor. Mother appealed.

## DISCUSSION

Mother contends the order terminating her parental rights should be reversed because the court never found by clear and convincing evidence that she was unfit or that awarding her custody would be detrimental to the minor. She cites several decisions that have held that "a court may not terminate a nonoffending, noncustodial mother's or presumed father's parental rights without finding, by clear and convincing evidence, that awarding custody to the parent would be detrimental." (*In re T.G.* (2013) 215 Cal.App.4th 1, 20, fn. omitted; see also *In re D.H.* (2017) 14 Cal.App.5th 719, 730; *In re Frank R.* (2011) 192 Cal.App.4th 532, 539; *In re Gladys L.* (2006) 141 Cal.App.4th 845, 848–849.) She urges us to exercise our discretion to review this argument on the merits, despite her failure to raise it below. We decline to do so.

"[A] reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court.

4

[Citation.] The purpose of this rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected." (*In re S.B.* (2004) 32 Cal.4th 1287, 1293, fn. omitted.) "Although the loss of the right to challenge a ruling on appeal because of the failure to object in the trial court is often referred to as a 'waiver,' the correct legal term for the loss of a right based on failure to timely assert it is 'forfeiture,' because a person who fails to preserve a claim forfeits that claim." (*Id.* at p. 1293, fn. 2.) While "[d]ependency matters are not exempt from this rule," the "application of the forfeiture rule is not automatic" and appellate courts have discretion to consider forfeited claims. (*Id.* at p. 1293.) "Although an appellate court's discretion to consider forfeited claims extends to dependency cases [citations], the discretion must be exercised with special care in such matters." (*Ibid.*) "Because these proceedings involve the well-being of children, considerations such as permanency and stability are of paramount importance." (*Ibid.*) Accordingly, especially in dependency cases, "the appellate court's discretion to excuse forfeiture should be exercised rarely and only in cases presenting an important legal issue." (*Ibid.*)

The history of this case demonstrates why the forfeiture rule exists, and we see no reason to exercise our discretion to depart from it. The court first set the section 366.26 hearing to terminate mother's parental rights in July 2019. Mother did not object to that at the time, nor did she argue that there were insufficient findings of detriment to support termination of her rights. The court held the first day of the section 366.26 hearing in October 2019, and the only concerns mother expressed then were focused on her visitation rights, not the agency's recommendations for terminating her parental rights. On neither of the next two dates for the hearing did mother object that there was an insufficient record or factual basis for terminating

5

her rights.  Mother also told the agency before the final date of the hearing that she supported the minor's desired plan of having the minor's adult sister adopt the minor.

Moreover, there is no indication in the record that mother ever made any serious attempts to exercise the parental rights she now seeks to preserve.  Mother had not exercised parental rights over the minor since at least 2010, when the minor was 20 months old and the probate court appointed the guardian.  Additionally, this dependency matter was pending in the juvenile court for over two and a half years.  Not once in that period did mother ask to have the minor placed with her, nor did mother ever request services to help her reunify with the minor.

Thus, by the last date of the section 366.26 hearing in September 2020, mother had been on notice for well over a year that the court was considering terminating her parental rights, rights she had not exercised or sought to exercise in 10 years.  Mother never objected, and repeatedly stated during the proceedings that she was unable to care for the minor.  She in fact supported a plan of adoption for the minor, a plan that necessarily involved the termination of her parental rights.  It is also possible, as the agency argues, that the juvenile court believed its finding at the detention hearing that placement of the minor in mother's home was contrary to the minor's welfare satisfied the need to establish detriment by clear and convincing evidence, although the court did not state on the record that its finding was by clear and convincing evidence.  Had mother raised the issue of a missing finding of detriment at any point during this process, the agency and juvenile court could have addressed the issue and, if necessary, collected evidence regarding mother's suitability as a placement for the minor and any potential detriment from such placement.  Mother's failure to raise her objection therefore

6

prevented the juvenile court from correcting the error she now complains of, so we will not exercise our discretion to entertain her arguments at this late date. (*In re S.B.*, *supra*, 32 Cal.4th at p. 1293 [purpose of forfeiture rule "is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected"].)

Mother asserts that courts have relaxed the forfeiture rule when a party raises important constitutional arguments, like her argument here regarding her due process interests in the care and custody of the minor. She cites several decisions that declined to apply the forfeiture rule and reversed orders terminating parental rights because of due process concerns about the absence of findings of detriment by clear and convincing evidence. (See *In re T.G.*, *supra*, 215 Cal.App.4th at p. 14; *In re Frank R.*, *supra*, 192 Cal.App.4th at p. 539; *In re Gladys L.*, *supra*, 141 Cal.App.4th at p. 849.) While mother's rights are important, these decisions do not persuade us that the forfeiture rule should be relaxed merely because mother now raises a due process claim. Most if not all dependency cases necessarily implicate parents' fundamental liberty interests in the care and custody of their children. *S.B.* nevertheless teaches that courts should rarely exercise their discretion to excuse forfeiture in dependency cases, because of children's paramount interests in permanency and stability. (*In re S.B.*, *supra*, 32 Cal.4th at p. 1293; see also *In re A.A.* (2012) 203 Cal.App.4th 597, 606 [constitutional challenges are subject to forfeiture].) Here, where the minor is almost 13 years old and mother has not occupied a parental role in her life since she was 20 months old, where minor has repeatedly made clear she has no desire to visit with mother, where minor has been placed with her adult sister—who wishes to adopt the minor—since September 2020, and where mother and the minor supported this plan of adoption, we conclude the minor's interest in

7

permanency and stability counsel against exercising our discretion to excuse mother's failure to properly raise her arguments below.

## DISPOSITION

The juvenile court's order is affirmed.


BROWN, J.


WE CONCUR:

STREETER, ACTING P. J.
TUCHER, J.


*In re A.C.*  (A160956)