Filed 11/14/13  Modified and certified for partial publication 12/4/13 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re X.Z., A Person Coming Under the Juvenile Court Law. | |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>JASMIN S.,<br><br>　　　Defendant and Appellant. | B247449<br>(Los Angeles County<br>Super. Ct. No. CK86090) |

APPEAL from an order of the Superior Court of Los Angeles County, Marguerite Downing, Judge.  Diane Reyes, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Lori A. Fields, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, Office of the County Counsel, James M. Owens, Assistant County Counsel and William D. Thetford, Deputy County Counsel, for Plaintiff and Respondent.

Appellant Jasmin S. (Mother) filed this appeal after the juvenile court's December 4, 2012 order terminated her parental rights over her infant daughter X.Z. under Welfare and Institutions Code section 366.26.[1] Mother seeks to revive issues arising out of the court's decision to terminate her reunification services at the September 12, 2011 six-month review hearing based on its understanding that Mother would be incarcerated for a period that exceeded the maximum reunification time permitted by statute. She contends reasonable reunification services were not provided prior to September 2011, that the caseworker misled the court about when she was likely to be released from prison, and that the court failed to make statutorily-mandated findings.

Mother does not dispute that orders terminating reunification services are ordinarily reviewable solely by way of writ, or that the court provided notice at the September 2011 hearing of the writ review requirement. She contends she is entitled to raise issues related to the reunification period in this proceeding because the notice the court provided did not inform her of the deadline to file a notice of intent to seek a writ. We conclude that Mother received sufficient notice of the writ requirement to preclude her from raising issues pertaining to the September 2011 order at this late date, and that, in any event, she raises no issues with respect to the September 2011 order requiring reversal. Accordingly, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

In January 2011, the family home was raided by police and a large quantity of methamphetamine and chemicals for the manufacture of methamphetamine

---

[1]     Undesignated statutory references are to the Welfare and Institutions Code.

were found.[2]  X.Z., then two months old, was detained by the Department of Children and Family Services (DCFS), along with her two half-siblings.[3]  After a brief period in foster care, X.Z. was placed with Mother's sister, Conseulo M.  A few days after the detention hearing, Mother was arrested and charged with possession of methamphetamine and child endangerment.

On February 16, 2011, the caseworker reported that Mother's case was about to be submitted to the district attorney's office for felony filing consideration.  The court ordered a supplemental report to address the status of both parents' criminal cases before the jurisdictional/dispositional hearing, but the caseworker was unable to obtain further information.

At the March 14, 2011, jurisdictional/dispositional hearing, the court found that Mother and Father "created a detrimental and endangering home environment for the children" by (1) "possess[ing] toxic, flammable, hazardous chemicals, used in the manufacture of methamphetamine in the children's home, within access of the children" and exposing the children to such chemicals; (2) keeping eight and one-half pounds of methamphetamine in the children's home, within access of the children; and (3) exposing the children to illicit drug trafficking in the home and in their presence.  At the same hearing, the court addressed disposition for Mother and ordered reunification services.  Mother's plan required her to participate in a parenting class and individual counseling to address case issues and drug awareness.

---

[2]    Hector A., the girl's father, was arrested and charged with possession of methamphetamine for sale, transportation of a controlled substance, manufacture of methamphetamine, and manufacture of methamphetamine in the presence of a child.  He is not a party to this appeal.

[3]    X.Z.'s half-siblings, a 13-year old boy and a nine-year old girl, were ultimately placed with their father and are not the subjects of this appeal.

On April 20, 2011, a new caseworker met with Mother, then incarcerated at Twin Towers. Mother advised her that the facility did not offer any programs for parents, and that she would be unable to make progress on the reunification plan until she was transferred to a state prison. Mother further reported that she anticipated receiving a four-year sentence and serving half or less. On June 8, the caseworker talked to Mother's probation officer, who reported he was working on the probation report and that Mother was likely to face a sentence of three to six years.[4] A few days later, on June 17, Consuelo told the caseworker she had spoken with Mother and that Mother had said she was going to serve 14 months in state prison and would enroll in classes once she arrived at the prison.[5] In mid-July, Mother was transferred to the California Institute for Women. In August, the caseworker left a message with Mother's correctional counselor asking for Mother's release date, but received no return call.

The September 2011 report, filed in advance of the six-month review hearing, stated that in June, Mother had been convicted of possession of a controlled substance for sale and child endangerment and that the court had imposed sentences of three years for the former crime and four years for the latter. The report did not indicate whether the sentences were to run consecutively or concurrently and gave no estimate of Mother's release date. It described the caseworker's unsuccessful effort to obtain Mother's precise release date from the correctional counselor. The report stated that maternal relatives were bringing X.Z. for prison visits, but that due to her incarceration, Mother had been unable to

---

[4] At the time of her arrest, Mother was on probation for taking drugs into a prison facility.

[5] Reports of these three conversations were in the delivered service log, which was not before the court at the six-month review hearing. The log was not filed until October 19, 2011.

participate in court-ordered programs. The report said it was "highly unlikely" Mother would be able to reunify with her children, even if additional reunification services were ordered. Therefore, it was recommended that reunification services be terminated.

At the September 12, 2011 six-month review hearing, the court stated it was inclined to terminate reunification services with respect to X.Z. due to her age (less than a year old).[6] Counsel for Mother stated: "I understand Mother will be incarcerated longer than the statutory period of reunification; however, I'm going to enter an objection today to terminating her services." The court expressed its understanding that both parents objected, but found that "since both parents will be incarcerated longer than the reunification period . . . [¶] . . . there is not a substantial probability that [X.Z.] may be returned to her parents by the 12-month permanency hearing." The court further found that the parents were unable to "complete any of the disposition case plan" due to their incarceration or to "demonstrate[] the capacity or ability to complete the objectives of the treatment plan and to provide for the child's safety, protection, physical and emotional health." The court terminated services and set a section 366.26 hearing for January 9, 2012. The minute order stated that the court found by a preponderance of the evidence that return of the minors to the physical custody of the parents would create a substantial risk of detriment to their physical or emotional well-being, that DCFS had complied with the case plan, that Mother was not in compliance with the case plan, and that reasonable services had been provided to meet the needs of the minors.

After terminating reunification services and setting the section 366.26 hearing, the court provided the following advisement: "[T]he court advises all

---

[6] The parties stipulated to Diane Reyes acting as a temporary judge at this hearing.

parties present and directs the clerk of the court to forward written advisement to parties not present that to preserve any right to review on appeal of the court's order setting a hearing to select and implement a permanent plan under 366.26, the party must seek an extraordinary writ by filing a notice of intent to file writ petition and request for record, or other notice of intent to file writ petition and request for record, and a writ petition-juvenile form, or other petition for extraordinary writ. [¶] I would advise you to speak to your attorney."

Mother did not seek writ review of the September 2011 order. After multiple continuances, the section 366.26 hearing was held on December 4, 2012. Mother presented no evidence, but objected to termination of her parental rights.[7] The evidence presented established that Consuelo, Mother's sister and X.Z.'s guardian since shortly after the detention, had repeatedly expressed her desire to adopt X.Z., and that X.Z. was thriving in Consuelo's care. The adoption home study was completed in August 2012. On December 4, the court found by clear and convincing evidence that X.Z. was adoptable, and that no exception to adoption applied. The court issued an order terminating parental rights over X.Z. Mother filed a notice of appeal from the order. Mother was released from prison in January 2013.

---

[7]     In the interim between the September 12, 2011 hearing and the December 4, 2012 hearing, Mother provided evidence of having participated in various programs in prison, including Alcoholics and Narcotics Anonymous, a behavioral transformation program and a parenting program. From the evidence presented, it appears her participation in such programs began in October 2011. In addition, the evidence indicated Mother had monthly visits with X.Z., until October 2012, when prison officials objected to contact visitation and Mother stated she did not wish to visit her daughter behind glass.

**DISCUSSION**

An order terminating reunification services and setting a section 366.26 hearing is "not appealable" unless "(1) A petition for extraordinary writ review was filed in a timely manner.[8] [¶] (B) The petition substantively addressed the specific issues to be challenged and supported that challenge by an adequate record. [¶] (C) The petition for extraordinary writ review was summarily denied or otherwise not decided on the merits." (§ 366.26, subd. (*l*)(1); see § 366.26, subd. (*l*)(2); *In re Cathina W.* (1998) 68 Cal.App.4th 716, 719.) Section 366.26, subdivision (*l*) and the court rules implementing it are intended to ensure that resolution of challenges to setting orders are resolved before the section 366.26 hearing. (*Karl S. v. Superior Court* (1995) 34 Cal.App.4th 1397, 1402-1403.) The provision supports "'the state's interest in expedition and finality'" and the child's interest in "'securing a stable, "normal," home,'" which goals would be compromised if the validity of issues addressed in the order terminating reunification services and setting the section 366.26 hearing remained undecided until after the court's adoption of a permanent plan. (*In re Anthony B.* (1999) 72 Cal.App.4th 1017, 1022-1023; see *In re Rashad B.* (1999) 76 Cal.App.4th 442, 447 ["In adopting section 366.26, subdivision (*l*), ' . . . the Legislature has unequivocally expressed its intent that [setting] orders be challenged by writ before the section 366.26 hearing.'"].)

---

[8]  Rule 8.450(e)(4) of the California Rules of Court sets out the various time limits for those seeking writ review. The shortest time limit applies to a party "present at the hearing when the court ordered [the] section 366.26 [hearing]": such party must filed a notice of intent to file a writ petition and a request for the record within seven days of the order. (Rule 8.450(e)(4)(A).) It is undisputed that Mother was present at the September 2011 hearing when the court set the section 366.26 hearing for January 9, 2012.

Section 366.26, subdivision (*l*) requires the court, after terminating reunification and issuing an order setting a section 366.26 hearing, to "advise all parties of the requirement of filing a petition for extraordinary writ review as set forth in this subdivision in order to preserve any right to appeal in these issues." (§ 366.26, subd. (*l*)(3)(A).) The notice must be "made orally to a party if the party is present at the time of the making of the order or by first-class mail by the clerk of the court to the last known address of the party not present at the time of the making of the order." (*Ibid.*) Rule 5.590(b) of the California Rules of Court similarly provides: "When the court orders a hearing under . . . section 366.26, the court must advise all parties and if present, the child's parent, guardian, or adult relative, that if the party wishes to preserve any right to review on appeal of the order setting the hearing under . . . section 366.26, the party is required to seek an extraordinary writ by filing a Notice of Intent to File Writ Petition and Request for Record . . . (form JV-820) or other notice of intent to file a writ petition and request for record and a Petition for Extraordinary Writ . . . (form JV-835) or other petition for extraordinary writ. [¶] (1) the advisement must be given orally to those present when the court orders the hearing under . . . section 366.26. [¶] (2) Within one day after the court orders the hearing under . . . section 366.26, the advisement must be sent by first-class mail by the clerk of the court to the last known address of a party who is not present when the court orders the hearing under . . . section 366.26." (Italics omitted.)

Rule 5.590(b) of the California Rules of Court goes on to state that "[t]he advisement must include the time for filing a notice of intent to file a writ petition" and that "[c]opies of Petition for Extraordinary Writ . . . (form JV-825) and Notice of Intent to File Writ petition and Request for Record . . . (form JV-820) must be available in the courtroom and must accompany all mailed notices informing the

8

parties of their rights." (Cal. Rules of Court, rule 5.590(b)(3) & (4), italics omitted.)

Mother contends the oral notice provided was defective because the court failed to indicate the time for filing a notice of intent.[9] Citing cases in which the juvenile court failed to advise the parent of his or her right to writ review of the order setting the section 366.26 hearing, she contends she must be permitted to raise issues related to a hearing that took place two years ago. For the reasons discussed, we conclude otherwise.

---

[9] Although the minute order stated that the court directed the clerk to send written information about writ procedures to the parents by first class mail to their last known address and that the clerk mailed the information, there is no proof of service in the record indicating that the information was actually mailed, and respondent does not suggest it was. In a separate motion to dismiss the appeal, respondent contended that we must presume the forms required by California Rules of Court, rule 5.590(b)(4) -- "Petition for Extraordinary Writ" and "Notice of Intent to File Writ Petition and Request for Record" -- were available in the courtroom. (See Evid. Code, § 664.) We do presume they were available and take judicial notice that the Notice of Intent, form JV-820, states on its face "[i]n most cases, you have only 7 days from the court's decision to file a Notice of Intent" and adds on the reverse side: "If you were present when the court set the hearing to make a permanent plan, you must file the Notice of Intent within 7 days from the date the court set the hearing." However, there is no indication in the record that the presence of such forms was made clear to Mother or that Mother was actually provided a form.

While this appeal was pending, Mother's counsel brought to our attention the recent decision in *Maggie S. v. Superior Court* (2013) 220 Cal.App.4th 662. There, the record indicated that the mother, who was present in the courtroom when the juvenile court denied reunification services, was provided a Notice of Intent to File Writ Petition form. The clerk also mailed her a written advisement of rights. The Court of Appeal concluded the failure to give an oral advisement at the hearing as required by section 366.26 and the Rules of Court excused Mother's failure to file a timely petition for extraordinary writ and construed her appeal of the order terminating parental rights as such petition. (220 Cal.App.4th at p. 671.) Here, unlike in *Maggie S.*, Mother was orally advised of the need to file a writ petition.

Courts have held that where the juvenile court fails entirely to advise a parent of his or her right to seek writ review of an order terminating reunification services and setting a section 366.26 hearing, claims of error relating to provision of reunification services are cognizable on appeal from the order terminating parental rights. (*In re Frank R.* (2011) 192 Cal.App.4th 532, 539; *In re Lauren Z.* (2008) 158 Cal.App.4th 1102, 1110; *In re Harmony B.* (2005) 125 Cal.App.4th 831; *In re Maria S.* (2000) 82 Cal.App.4th 1032, 1038; *In re Rashad B.*, *supra*, 76 Cal.App.4th at p. 450; *In re Cathina W.*, *supra*, 68 Cal.App.4th at pp. 722-724.) We find those cases inapposite. Here, the court did advise Mother that "to preserve any right to review on appeal" of the September 2011 order, she "must seek an extraordinary writ by filing a notice of intent to file writ petition and request for record, or other notice of intent to file writ petition and request for record, and a writ petition-juvenile form, or other petition for extraordinary writ." In the presence of counsel, the court expressly advised Mother to "speak to your attorney." The court's only fault was in failing to mention the deadline for filing the notice of intent and request for record. But Mother did not merely miss the deadline for filing a notice of intent and request for record. She failed to file a writ petition, notice of intent or request for record at *any* time, ignoring the court's advisement that this was the sole method to preserve her right to review its September 2011 order.

No case of which we are aware has held that failure to inform a party of the deadline, standing alone, justifies disregarding section 366.26, subdivision (*l*) and permitting a parent to re-open reunification issues by an appeal filed after the permanent plan has been implemented. Nor do we believe such a rule would be wise. It is not at all unusual for dependency proceedings to move slowly after termination of reunification services, as the focus shifts to determining a child's adoptability and considering potential permanent homes. A year or more may pass

10

before the necessary investigations and paperwork are completed and the final plan approved by the court, during which time the child becomes increasingly accustomed to a new environment and new caregivers. Any rule allowing a parent to belatedly raise issues relating to the reunification phase should be drawn as narrowly as possible. Where no information about the writ review requirement was provided by the court, such a rule is a necessary evil required to protect fundamental due process despite its detrimental impact on the goals of expedition, finality and stability. (See *In re Frank R.*, *supra*, 192 Cal.App.4th at p. 539.) But where the parent has been advised of the necessity of seeking review by way of a writ proceeding with no information about the deadline, he or she has the option of filing a writ petition or notice of intent within any reasonable time and asking the Court of Appeal to grant relief from default for a late filing. (See *Jonathan M. v. Superior Court* (1995) 39 Cal.App.4th 1826, 1831 [petitioner who files notice of intent late may obtain relief from default on showing of good cause]; *Karl S. v. Superior Court, supra,* 34 Cal.App.4th at p. 1404 [same].) Mother could have obtained review of the court's September 2011 order by filing a late writ petition or notice of intent, and presenting evidence that she had been misled or confused by the court's advisement. Instead, having been advised of the need to seek writ review, she sought none at any time during the nearly 15 months between the September 2011 hearing terminating reunification services and the December 2012 section 366.26 hearing. On this record, we see no basis to apply the rule applicable to parents who were not advised of their right to seek writ review of an order terminating reunification services. Accordingly, we conclude the issues raised in Mother's appeal pertaining to the September 2011 order are not reviewable at this time.

Moreover, even were we to reach the merits, we would not reverse the September 2011 order. Pointing out that the statutory provision governing six-

11

month review hearings for children under the age of three (§ 366.21, subd. (e)) requires the court to continue the case to the 12-month permanency hearing if it finds that "reasonable services have not been provided [to a parent]," Mother contends that she was provided no services prior to the six-month review hearing and that no reunification plan was ever developed. Preliminarily, we note that Mother did not raise these issues at the September 11 hearing. "A parent's failure to raise an issue in the juvenile court prevents him or her from presenting the issue to the appellate court." (*In re Elijah V.* (2005) 127 Cal.App.4th 576, 582.) Moreover, the record reflects that reasonable services were provided to the extent possible under the circumstances. (See *Robin V. v. Superior Court* (1995) 33 Cal.App.4th 1158, 1164 ["The adequacy of reunification plans and the reasonableness of [DCFS's] efforts are judged according to the circumstances of each case."]; *In re Misako R.* (1991) 2 Cal.App.4th 538, 547 ["The standard is not whether the services provided were the best that might be provided in an ideal world, but whether the services were reasonable under the circumstances."].) At the dispositional hearing, the court ordered a straightforward plan for Mother, a parenting course and individual counseling to address case issues and drug awareness. The caseworker met with Mother in April 2011, shortly after the dispositional hearing, when Mother was still incarcerated at Twin Towers, to discuss the plan. Mother informed the caseworker that no services were available there, but would be available when she was transferred to a state prison. She was transferred to the California Institute for Women in mid-July 2011. She informed her sister Consuelo that she going to enroll in the programs available there, and Consuelo so advised the caseworker.[10] However, the record indicates Mother did

---

[10] At no point, did Mother indicate she was meeting any resistance from prison officials or ask the caseworker for assistance.

not begin to participate in prison programs until late 2011, after the hearing terminating reunification services and setting the section 366.26 hearing. Mother's failure to make progress in the programs assigned her within the six months following the dispositional hearing was not the fault of the caseworker, but was a consequence of Mother's criminal conduct -- resulting in her incarceration for the first four months in a facility with no services -- and of her failure even to begin the programs available following her transfer in July. (See *In re Lauren Z., supra,* 158 Cal.App.4th at p. 1111 [mother placed herself out of reach of any meaningful rehabilitative services Department could have provided when she engaged in conduct that resulted in her imprisonment out of state].)

Mother also contends that the caseworker misled the court by indicating in the September 2011 report that she would be imprisoned longer than was expected. The record indicates that when Mother and the caseworker met in April 2011, Mother anticipated being incarcerated for a total of two years. The probation officer had estimated three to six years. The caseworker attempted to determine the precise date Mother was scheduled to be released, but was unable to reach the appropriate prison official. In the meantime, the caseworker heard from Consuelo that Mother believed she would serve 14 months, but did not include this information in the September 2011 report. The caseworker was not required to report secondhand speculation which, in any event, proved to be incorrect. The caseworker included in the September 2011 report the only concrete information she had: the length of the two sentences imposed for the two offenses Mother committed. Based on the information provided, the court presumed -- correctly -- that Mother would be incarcerated longer than the one-year period of reunification generally applicable to children under the age of three. (See § 361.5, subd. (a)(1).) Mother was present in court, with her counsel, and could have corrected any misapprehension on the court's part. Instead, Mother's counsel agreed she would

13

be "incarcerated longer than the statutory period of reunification." In fact, Mother was not released until January 2013 and would not have been in a position to reunify with X.Z., even if the court had waited to terminate services and set a section 366.26 hearing until the 12-month or 18-month review dates. Under these circumstances, any misinformation in the September 2011 report about Mother's period of incarceration did not prejudice her.

Mother contends the court failed to make statutorily-mandated findings at the September 2011 hearing, specifically, a finding that reasonable services were provided to Mother or a finding by clear and convincing evidence that Mother "'failed to participate regularly and make substantive progress in a court-ordered treatment plan.'" The last paragraph of section 366.21, subdivision (e) provides that if the child is not returned to his or her parent or legal guardian, "the court shall determine whether reasonable services that were designed to aid the parent or legal guardian in overcoming the problems that led to the initial removal and the continued custody of the child have been provided or offered to the parent or legal guardian."[11] (See also Cal. Rules of Court, rule 5.708(e)(1).) Although not articulated at the hearing, the minute order reflects that the court made this finding. (See *In re Merrick V.* (2004) 122 Cal.App.4th 235, 249 [conflicts between reporter's transcript and clerk's transcript may be resolved in favor of clerk's transcript where particular circumstances dictate]; *In re Byron B.* (2004) 119 Cal.App.4th 1013, 1018 [reporter's transcript and clerk's transcript are to be

---

[11]    The first paragraph of section 366.21, subdivision (e) provides that the court shall, at the six-month review hearing, "order the return of the child to the physical custody of his or her parent or legal guardian unless the court finds, by a preponderance of the evidence, that the return of the child to his or her parent or legal guardian would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child." (§ 366.21, subd. (e).) There is no dispute that the court made this finding.

14

harmonized if possible and clerk's transcript may be viewed as clarifying point reporter's transcript left ambiguous]; *People v. Smith* (1983) 33 Cal.3d 596, 599 ["'[T]hat part of the record will prevail, which because of its origin and nature or otherwise, is entitled to greater credence [citation].'"]; *People v. Malabag* (1997) 51 Cal.App.4th 1419, 1423 ["Absent a conflict between the transcripts, the clerk's transcript can establish a valid waiver where the reporter's transcript is silent on the matter."].) For the reasons already discussed, we have concluded that substantial evidence supports that the services provided were reasonable under the circumstances.[12]

The court must also find "by clear and convincing evidence that the parent failed to participate regularly and make substantive progress in a court-ordered treatment plan" if it terminates reunification services and sets a section 366.26 hearing, as it did here. (§ 366.21, subd. (e).) Although the court found that Mother was not in compliance with the case plan, it erroneously made the finding under the preponderance of the evidence standard. We do not, however, believe this constitutes ground for reversal. The evidence was undisputed that Mother had made no progress and Mother offered no excuse for her lack of progress or failure to enroll in the programs available. Accordingly, assuming Mother had not

---

[12] Mother contends that DCFS's alleged failure to provide reasonable services during the six-month post-disposition period and the court's alleged failure to find that reasonable services were provided at the September 2011 hearing precluded the court from terminating parental rights over X.Z. at the December 4, 2012 section 366.26 hearing. (See § 366.26, subd. (c)(2)(A); *In re T.M.* (2009) 175 Cal.App.4th 1166, 1173.) The court's minute order included the findings that "reasonable services [were] provided to meet the needs of the minors" and that "DCFS . . . complied with the case plan." These findings were sufficient to establish that the court believed reasonable services had been provided to Mother. For the reasons discussed, substantial evidence supported that finding. Accordingly, we reject this contention.

forfeited her right to appellate examination of these issues by failing to seek writ review, we would find no basis for reversing the September 2011 order terminating services and setting the section 366.26 hearing.

## DISPOSITION

The order terminating parental rights is affirmed.

MANELLA, J.

We concur:

EPSTEIN, P. J.

WILLHITE, J.

**CERTIFIED FOR PARTIAL PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re X.Z., A Person Coming Under the Juvenile Court Law. | |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | B247449 (Los Angeles County Super. Ct. No. CK86090) |
| Plaintiff and Respondent, | ORDER MODIFYING OPINION AND CERTIFYING OPINION FOR PARTIAL PUBLICATION [NO CHANGE IN JUDGMENT] |
| v. | |
| JASMIN S., | |
| Defendant and Appellant. | |

THE COURT:*

It is ordered that the opinion filed November 14, 2013 be modified as follows:

page 1, lines 16-19, the sentence "We conclude that Mother received sufficient notice of the writ requirement to preclude her from raising issues pertaining to the September 2011 order at this late date, and that, in any event, she raises no issues with respect to the September 2011 order requiring reversal." is deleted and replaced with the following text: "In the published portion of the opinion, we conclude that Mother received sufficient notice of the writ requirement to preclude her from raising issues

pertaining to the September 2011 order at this late date.  In the unpublished portion, we discuss the issues raised with respect to the September 2011 order and conclude none would require reversal in any event."

The opinion was not certified for publication in the Official Reports.  For good cause it now appears that the opinion should be certified for partial publication in the Official Reports.  Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion, as modified, is certified for partial publication with the exception of the text from page 11, line 26 (beginning with the word "Moreover") through page 16, line three (ending with the word "hearing").

This modification does not change the judgment.

_____
*EPSTEIN, P. J.              MANELLA, J.              WILLHITE, J.

2