Filed 10/7/15  In re Priscilla R. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re PRISCILLA R., a Person Coming Under the Juvenile Court Law.<br><br>ORANGE COUNTY SOCIAL SERVICES AGENCY,<br><br>　　Plaintiff and Respondent,<br><br>　　　　v.<br><br>M.K. et al.,<br><br>　　Defendants and Appellants. | G051448<br><br>(Super. Ct. No. DP025235)<br><br>O P I N I O N |

　　　　　Appeals from orders of the Superior Court of Orange County, Craig E. Arthur, Judge.  Appeals dismissed.

　　　　　Marissa Coffey, under appointment by the Court of Appeal, for Defendant and Appellant M.K.

Liana Serobian, under appointment by the Court of Appeal, for Defendant and Appellant Nicholas R.

Nicholas S. Chrisos, County Counsel, Karen L. Christensen and Aurelio Torre, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for the Minor.

## INTRODUCTION

Appellants Nicholas R. and M.K. are the parents of the minor Priscilla R., who was born heavily addicted to the drugs M.K. had been taking during her pregnancy. Nicholas too was addicted to drugs and to alcohol. After Priscilla was born, he saw her in the hospital only once because he did not want to get "attached" to her, and he voiced several times his hope that she could be put up for adoption. He repeatedly disclaimed his readiness for parenthood.

Orange County Social Services Agency (SSA) detained Priscilla on the day of her birth. She spent nearly a month in the hospital getting drugs out of her system and was then placed with Nicholas' mother, who now wishes to adopt her.

Between detention and the hearing on the termination of parental rights, Nicholas could not be found. His attorney did not know where he was. Two due diligence searches by SSA failed to locate him. He turned up for an interview by a social worker about a month after Priscilla's birth and then disappeared again. The dependency hearings went on without him, but with his court-appointed attorney present.

Because of their heavy drug use, the juvenile court bypassed reunification services for both Nicholas and M.K. Nicholas finally surfaced at the Welfare and Institutions Code section 366.26[1] hearing, maintaining that he had turned over a new leaf and had been in a rehabilitation program for a month. He opposed termination of his parental rights. Needless to say, it was too late.

---

[1] All further statutory references are to the Welfare and Institutions Code.

2

Faced with this history, Nicholas does not assert on appeal that the termination order should be reversed because his bond with Priscilla outweighs the benefits of adoption. His focus is elsewhere: The clerk of the court was a day late in mailing writ review papers. The juvenile court should have granted a continuance to allow his attorney to continue to scour Orange County to find him. He should not have been bypassed for reunification services.

All of these purported deficiencies took place in connection with the hearing on reunification services, on October 22, 2014. The time to seek review of the events of that hearing has expired. We therefore dismiss this portion of Nicholas' appeal.

Nicholas also raised an issue on appeal, although not in the juvenile court, about the sufficiency of notice under the Indian Child Welfare Act (ICWA). After the appeal was filed, SSA redid the notice and moved in this court to augment the record and to take additional evidence. Nicholas' objections to the motions lacked merit. We granted the motions. Nicholas failed to file timely objections to the additional evidence, and the revised notice appears to us to conform to the requirements of the ICWA. We therefore dismiss this portion of the appeal as moot.

Finally, M.K. filed an appeal adopting Nicholas' arguments. She did not assert that notice to her was defective, that her request for a continuance should have been granted, or that she should not have been bypassed for reunification services. She failed to object to SSA's motions to take new evidence and to augment the record. We dismiss her appeal for the same reasons as Nicholas'.

**FACTS**

Priscilla was born in late July 2014. She was immediately admitted to the neonatal ICU, because of the drugs in her system. She spent most of the first month of her life going through withdrawal. SSA filed a non-custodial detention petition, and the detention hearing took place on July 30, 2014. At that time, the juvenile court appointed counsel for Nicholas, M.K., and Priscilla. M.K. attended the hearing, but Nicholas left

3

before the hearing, after meeting his counsel. At the time of the hearing, Nicholas's mailing address was his father's house in Huntington Beach.[2]

SSA interviewed Nicholas twice in late July – once in person at Priscilla's hospital and once by phone. At that time, he stated he was not ready for parenthood. He had another interview with a social worker at the end of August, at which time the person whose couch he had been occupying for 10 days washed his hands of Nicholas, and his address became problematic. The social worker presented Nicholas with information about an array of services, including substance abuse treatment, and reminded him of the drug testing requirement, which Nicholas had failed to fulfill. Nicholas had no clear idea of where he would be residing in the future.

SSA spoke to Nicholas' mother on July 30, 2014, the day of the detention hearing. She claimed her family had Blackfeet[3] ancestry. She called her father, Priscilla's great-grandfather, on the spot; he too claimed Blackfeet ancestry. SSA gathered all the "information that the family was able to or willing to provide at this time." Nicholas' mother said he would not know any more than she did about this ancestry.

SSA sent a notice of child custody proceeding for Indian child form to the Bureau of Indian Affairs in Sacramento, to the Secretary of the Interior in Washington, D.C., to the Blackfeet Tribe of Montana in Browning, Montana, and to M.K. and Nicholas at the addresses they had provided to the juvenile court. The Blackfeet tribe responded that neither Nicholas' mother nor his grandfather was listed on tribal rolls. Therefore, Priscilla was not an "Indian child."

---

[2] M.K. originally gave this address as hers as well. At the detention hearing, however, she changed her address.

[3] This is a term that sometimes causes controversy and confusion between the Blackfoot of Alberta and the Blackfeet of Montana. Our case involves the latter.

4

Priscilla was discharged from the hospital toward the end of August. She was placed with Nicholas' mother. SSA set up a visitation schedule for both Nicholas and M.K.[4]

At a predisposition hearing on September 10, 2014, at which neither parent was present, SSA put the parents' counsel on notice that it would seek to bypass reunification services when the disposition hearing finally took place. The addendum report for a hearing on September 30 made the same recommendation, citing in Nicholas' case his denial of any problem with alcohol, despite two DUIs, his expressions of his unwillingness to care for Priscilla, and his wish to have her adopted.

SSA had no direct contact with Nicholas between the end of August and the middle of October 2014, when he left a telephone voice message stating that he wanted to get into a drug program. Up to that time he had missed scheduled appointments with SSA, had not been visiting Priscilla, and nobody – including his lawyer – seemed to know where to find him.[5] It does not appear that he had turned up for even one drug test. The social worker bustled about, assembling services for Nicholas, emailing a list of detoxification programs to Nicholas' aunt. The next day, the aunt spoke to the social worker by phone, telling her that Nicholas refused to enroll in the programs. According to the aunt, "He doesn't want to [overcome his addiction] right now. He has voiced it publically [*sic*] that he does not want to parent [Priscilla]. He's just not there right now . . . He doesn't want to stop using. He has the capability of being a good parent, eventually."

---

[4] Both parents had been given liberal visitation while Priscilla was in the hospital, but the record indicates they seldom visited. Nicholas told one of his parents he did not visit Priscilla because he did not want to become "attached" to her.

[5] At the hearing on September 30, Nicholas' lawyer asked for a continuance, stating he had not been in touch with his client since the detention hearing at the end of July. Counsel could not assure the court he would be able to produce his client if the continuance was granted.

SSA conducted two due-diligence searches for Nicholas, the first for the hearing on September 30 and the second at the end of October, after the hearing bypassing reunification services, for a notice review hearing on December 8, 2014. Both searches were unsuccessful.

5

The disposition hearing, which had been continued several times, finally took place on October 22, 2014. Neither parent was present. Their counsel asked the court for continuances, which the court denied.[6] Counsel submitted on SSA's reports of the previous months. The juvenile court declared Priscilla a dependent child and found that SSA could bypass reunification services for both parents. Because neither parent was present, the court ordered their counsel to provide notice of their right to file a writ. The court set a permanent plan hearing for February 4, 2015.

The minute order for the October 22, 2014, hearing stated, "Court orders SSA to notice to all parties as required by law. [¶] Parents noticed by first class mail that if the party wishes to preserve any right to review on appeal of the order setting the hearing under [section] 366.26 [of the Welfare and Institutions] Code, the party is required to seek an extraordinary writ by filing a notice of intent to file writ petition and request for record (JV-820) and petition for extraordinary writ (JV-825). [¶] Court orders SSA to provide notice to all parties as required by law. [¶] . . . [¶] Forms JV-820 and JV-825 and copy of minute order dated 8-22-2014 [*sic*] mailed on 8-23-2014 [*sic*] to . . . [Nicholas]. [¶] . . . **Order entered and copies served in manner provided by law together with explanation of right to seek review by Juvenile Court and explanation of appeal rights served in manner provided by law."** The record also contains a clerk's certificate of service by mail, stating in part, "A copy(ies) of Minute Order(s) dated 22-OCT-14 and a Notice of Statutory Rights was deposited in the United States Mail, in a sealed envelope with postage fully prepaid addressed as shown above. The mailing and this certification occurred at Orange, California, on Oct. 24, 2014."[7]

A notice review hearing was held on December 8, 2014, in anticipation of the permanency hearing scheduled for February. At that time, the juvenile court found

---

[6] M.K. was present in court on September 30. Nicholas had never been present in court.

[7] The record also contains another clerk's certification of service by mail identical to the first one except that the hearing date is given as "23-OCT-2014."

6

"notice of hearing was given to the BIA and all appropriate tribe(s) in accordance with ICWA. [¶] Court finds ICWA does not apply." Nicholas's counsel was present at that hearing. On December 23, the juvenile court found that SSA had exercised due diligence in trying to find Nicholas to give him notice and ordered notice provided by his counsel.

In early January 2015, Nicholas' mother, who lives in Corona, picked him up in Huntington Beach; he was sleeping outside on an abandoned couch. He was drunk. His mother took Nicholas to a hotel in Riverside for the night, and the next day his aunt and grandparents took him to a recovery program. His blood alcohol level was three times the legal limit at check-in time. Nevertheless, while waiting to be checked in to the program, Nicholas walked down the street to buy a pint of liquor. His program was supposed to last 45 days.

The hearing on termination of parental rights took place on February 4, 2015. Both Nicholas and M.K. were present – Nicholas for the first time – and both testified. The juvenile court found it was in Priscilla's best interest to terminate Nicholas' and M.K.'s parental rights and that the beneficial interest exception of section 366.26, subdivision (c)(1)(B) did not apply. The juvenile court also found Priscilla generally and specifically adoptable and ordered a permanent plan of adoption. Both Nicholas and M.K. have appealed.

## DISCUSSION

Nicholas raises four issues on appeal. First, he complains he did not receive proper notice of his right to take a writ from the October 22, 2014, order setting the permanent plan hearing, in that the written writ advisement was mailed a day late and did not include the proper forms. Second, he claims the juvenile court abused its discretion in denying a continuance of the October 22 disposition hearing in order to allow his counsel to find him. He next contends substantial evidence does not support the juvenile court's order bypassing his reunification services under section 361.5,

7

subdivision (b). Finally, he asserts the notice to the Blackfeet tribe regarding Priscilla was defective, requiring reversal of the February 4 order terminating his parental rights.[8]

The first three issues are related. If Nicholas was afforded proper notice of his right to writ review of the October 22 order, then he has forfeited his ability to have anything that happened at that hearing reviewed. The denial of Nicholas' counsel's request for continuance and the bypassing of reunification services both took place at the October 22 hearing, when the hearing on Priscilla's permanent plan was set. "All court orders, regardless of their nature, made at a hearing in which a section 366.26 permanency planning hearing is set must be challenged by a petition for extraordinary writ." (*In re Merrick V.* (2004) 122 Cal.App.4th 235, 247.)[9]

When a parent has received no notice whatsoever of the necessity for writ review, courts have allowed him or her to appeal matters that would otherwise have required a writ. (See, e.g., *In re Frank R.* (2011) 192 Cal.App.4th 532, 539; *In re Harmony B.* (2005) 125 Cal.App.4th 831, 838-839.) When a parent has been afforded the required notice but claims the notice was defective for some reason, the courts inquire whether the claimed defect prejudiced the parent. For example, in *In re X.Z.* (2013) 221 Cal.App.4th 1243, the mother claimed the juvenile court's advisement of the writ review requirement was ineffective because the court did not tell her what the deadline for filing the notice of intent was. (*Id.* at p. 1250.) The reviewing court held that the defect, if such

---

[8] On appeal, M.K. asserts that if we reverse the termination of his parental rights, we must reverse the termination of hers as well. She is, of course, correct about the effect of any reversal of the termination of Nicholas' parental rights. (See Cal. Rules of Court, rule 5.725(g).) She raises no issues of any error regarding herself, however.

[9] Section 366.26, subdivision (l), provides, in pertinent part: "(1) An order by the court that a hearing pursuant to [section 366.26] be held is not appealable at any time unless all of the following apply: [¶] (A) A petition for extraordinary writ review was filed in a timely manner. [¶] (B) The petition substantively addressed the specific issues to be challenged and supported that challenge by an adequate record. [¶] (C) The petition for extraordinary writ review was summarily denied or otherwise not decided on the merits. [¶] (2) Failure to file a petition for extraordinary writ review within the period specified by rule, to substantively address the specific issues challenged, or to support that challenge by an adequate record shall preclude subsequent review by appeal of the findings and orders made pursuant to [section 366.26]."

California Rules of Court, rule 5.590(b)(2) requires the clerk to send written notice to the last known address of any party not present within one day after the juvenile court orders a hearing under section 366.26.

8

it was, had not prejudiced her; she could have filed a late petition for writ review with an explanation of good cause. Instead, she filed nothing at all during the 15 months between the disposition hearing and the hearing on termination of her parental rights. (*Id.* at pp. 1251-1252.) She had forfeited the right to review from the disposition hearing.

The same analysis obtains when the court is not at fault if notice was not received. In *In re A.H.* (2013) 218 Cal.App.4th 337, the parents did not receive notice of the necessity of writ review because (a) they left the 18-month review hearing in a huff before it was concluded and (b) they failed to give proper mailing addresses to the juvenile court. (*Id.* at p 351.) The court concluded neither parent had shown the "exceptional circumstances" required to excuse them from complying with the writ requirement.

The record in this case is somewhat muddled, owing to what must be a typographical error in the minute order. Nevertheless, it is reasonably clear that the proper notice was mailed to Nicholas at his last known address, one he had not changed since the case began. It is also clear that Nicholas was unreachable during the critical time period. SSA hunted for him in vain. His attorney could not locate him. His father, whose home was his mailing address, had no idea where he was. It is therefore difficult to see how a day-late mailing, if it occurred, could have prejudiced him.[10]

Nicholas claims he was prejudiced because SSA changed its position about recommending reunification services for him. At the beginning of the case, SSA offered reunification services, but decided in early September to recommend bypassing services. Nicholas now claims he should have been warned about this change in position before the disposition hearing on October 22.

---

[10] Nicholas also claims that the clerk's mailing did not include the required forms, JV-820 and JV-825. The record indicates that it did. (See *In re Zamer G.* (2007) 153 Cal.App.4th 1253, 1271 [appellate court indulges all presumptions to support lower court's order].)

9

As should be clear by now, the reason Nicholas did not know about this change of position, if he truly did not, was that he could not be bothered to keep in touch with his court-appointed attorney. SSA put everyone on notice in early September, at a hearing Nicholas did not attend, that it would seek to bypass reunification services. At another hearing Nicholas did not attend, on September 30, his counsel asked for a continuance because he had not spoken to Nicholas since late July, right before the detention hearing, which he also did not attend. Even then, at the end of September, counsel could not assure the court that he would be able to produce Nicholas at a continued hearing. Nicholas did not know about SSA's change of position because of his own conduct, and has no legally cognizable complaint about that.

Nicholas knew he had a case pending in juvenile court that would eventually decide his daughter's fate. Nevertheless he simply dropped out. He did not even keep in touch with his lawyer. His aunt summed up the situation in mid-October, less than a week before the disposition hearing: "[Nicholas] does not want to [overcome his addiction] right now. He has voiced it publically [*sic*] that he does not want to parent her. . . . He's just not there right now. . . . He doesn't want to stop using." In essence, he vanished into his addiction. No notice, whether mailed on October 23 or on October 24, could have reached him where he had gone.

As to the claimed deficiencies in the notice to the Blackfeet tribe, SSA, in essence, redid the notice giving more details, and the tribe again responded that Priscilla is not an Indian child. We granted SSA's motion to take additional evidence and to augment the record with the relevant documents. (See *In re Salvador M.* (2005) 133 Cal.App.4th 1415 1421.) Nicholas's objections to the motions themselves were without merit, and he did not file timely objections to the evidence itself, explaining why the notice was still defective. The revised notice appears to conform to the requirements of

10

the ICWA.  (See 25 C.F.R. § 23.11(d).)  We therefore dismiss this portion of the appeal as moot.[11]

## DISPOSITION

The appeals of Nicholas R. and M.K. from orders entered at the October 22, 2014, hearing are dismissed as untimely.  Their appeals from the order terminating their parental rights are dismissed as moot.



BEDSWORTH, J.

WE CONCUR:


O'LEARY, P. J.


MOORE, J.

---

[11] We therefore do not decide whether Nicholas forfeited this issue by failing to raise it at the appropriate time, an issue presently before the California Supreme Court in *In re Isaiah W.* (2014) 228 Cal.App.4th 981, review granted October 29, 2014, S221263.