Filed 10/4/21  In re N.C. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION TWO

| | |
|---|---|
| In re N.C., a Person Coming Under the Juvenile Court Law. | B310951 (Los Angeles County Super. Ct. No. 19CCJP01343B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,  Plaintiff and Respondent,  v.  NICHOLAS C.,  Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Tamara E. Hall, Judge.  Affirmed.

Neale B. Gold, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and David Michael Miller, Deputy County Counsel, for Plaintiff and Respondent.

The father in this juvenile dependency appeal, Nicholas C. (Father), challenges the juvenile court's order terminating reunification services with regard to his son N.C. At the six-month review hearing, the court found that respondent Department of Children and Family Services (DCFS) offered or provided reasonable reunification services and that Father failed to engage in any services. Father contends that DCFS failed to provide reasonable services while he was incarcerated and that he is entitled to another period of reunification. We conclude substantial evidence supports the juvenile court's finding and affirm.

## FACTS AND PROCEDURAL HISTORY

### I.     Facts

Father has two minor children with S.P. (Mother): N.C. (born 2019), the subject of this appeal, and J.C. (born 2018).[1] Mother is not a party to this appeal and sibling J.C. is not a subject of this appeal.

In April 2019, the juvenile court asserted dependency jurisdiction over sibling J.C. based on Father's and Mother's substance abuse, Mother's history of violent altercations, and Father's failure to make an appropriate plan for the child's ongoing care and supervision. In June 2019, the juvenile court placed J.C. with Mother, ordered reunification services for Father with regard to J.C., and ordered Father to participate in a full drug and alcohol program, weekly drug testing, and parenting and individual counseling. Father never participated in any court-ordered services regarding J.C.

In January 2020, Father was arrested and incarcerated on a murder charge, and remained in jail throughout the period relevant to this appeal.

In May 2020, Mother was found unresponsive and not breathing in a vehicle with both eight-month-old N.C. and sibling J.C. present, apparently due to a drug overdose, and was revived with Narcan.

---

[1] Mother was born in 2001 and Father in 2000. Both young parents had DCFS history themselves as minors, and Mother continued to have an open case as a "Non-Minor Dependent" during trial court proceedings.

A removal order was authorized and DCFS removed N.C. and J.C. from Mother on May 29, 2020.

## II. Procedural History

### A. *Detention, arraignment, jurisdiction and dispositional hearings*

On June 2, 2020, DCFS filed a petition under section 300 of the Welfare and Institutions Code, alleging N.C. was at substantial risk of harm due to both parents' ongoing substance abuse, Mother's history of violent altercations, and Mother's mental and emotional problems.[2]

At the detention hearing on June 5, 2020, the juvenile court detained N.C. from both parents. Father was not present. The court ordered that Father was permitted to have telephone contact with N.C. at least one time a week, upon request, "if consistent with the rules of the facility he is in," and that DCFS was to make best efforts to assist Father with communicating with N.C. The court also ordered DCFS to submit a request to have Father transported to court for arraignment and adjudication.

Father was not present at his arraignment hearing on July 1, 2020. The juvenile court found him to be the presumed father of N.C. and ordered that he be interviewed in custody before the adjudication hearing. Father's attorney provided his mailing address on July 1, 2020. DCFS wrote to Father on July 10, 2020, but was unable to interview him in custody before the next hearing due to COVID-19 restrictions.

On July 16, 2020, the juvenile court sustained N.C.'s dependency petition and exerted dependency jurisdiction over N.C. under section 300, subdivisions (b)(1) (failure to protect, as to Mother) and (j) (abuse of sibling, based on Mother's and Father's substance abuse and Mother's history of engaging in violent altercations). The court found that N.C. was at substantial risk of harm due in part to Father's "failure to engage in services to address the issues, in the case of [J.C.]"

---

[2] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

3

Father was a "missout" for the hearing, which was held by video conference, and counsel stated that Father had granted permission for counsel to waive his appearance in the event he was not present.

Proceeding to disposition, the court ordered reunification services for Father with regard to N.C., and ordered Father to participate in a full drug and alcohol program, weekly drug testing, and parenting and individual counseling, mirroring the prior orders with regard to sibling J.C. The court found that Father "has not participated in the services which were intended to rehabilitate him and reunify him with [J.C.], up to this point. There is no evidence that he has any plan for the children. He is currently incarcerated. He has provided no information to the social worker about any services that he has participated in thus far."

*B. Reunification period and six-month status review hearing*

On September 8, 2020, DCFS called North County Facility, where Father was incarcerated, to assess his compliance with court orders. Officer Rivera Blue informed DCFS that Father had been placed in a disciplinary housing unit since July 2020, which prevented him from participating in groups. Although the facility was hosting groups for a limit of eight inmates per housing block, Father was unable to participate because of his disciplinary restrictions.

The DCFS social worker asked if she could visit Father, but Officer Blue informed her that Father was prohibited from having any visitation or phone calls with anyone but his attorney due to his disciplinary sanction. Prior to the COVID-19 pandemic, Father had not enrolled in any court-ordered services at his facility, nor had he participated in any other programs at the facility except for taking six independent study classes toward his high school diploma on January 29 through March 3, 2020.

On September 18, 2020, the juvenile court terminated reunification services for both parents with regard to sibling J.C.

During the reunification period for N.C., DCFS wrote to Father on or about September 3, September 8, October 9, and November 5, 2020. At least three of these mailings consisted of letters to Father

4

enclosing the court plan, providing referrals for programs, and requesting that Father report whether he had enrolled in any programs requested by the court. In November 2020, DCFS also enclosed a letter requesting for Father to have the ability to enroll in his programs because they were court ordered.

Although the court had ordered transportation services for Father for the six-month review hearing in January 2021, Father was not present and the court continued the hearing to February 23, 2021 so that proper notice and transportation could be provided. On February 5, 2021, DCFS called Father's facility and was informed that Father could not complete classes because inmates were not currently allowed to attend programs due to COVID-19 restrictions.

On the date of the hearing on February 23, 2021, Father again was not present and Father's attorney waived his appearance. The juvenile court found that DCFS "has complied with the case plan by providing or offering or making reasonable and/or active efforts to provide or offer reasonable services to enable the child's safe return home and to complete and finalize the permanent placement of the child." The juvenile court concluded that there was clear and convincing evidence that DCFS had made reasonable efforts but that Father's progress with his reunification case plan was "none," noting that this also had been the case with regard to sibling J.C. before the COVID-19 pandemic. Moving to disposition, the court terminated reunification services for Father, continued services for Mother (finding she made "partial" progress), and set a 12-month permanency hearing under section 366.21, subdivision (f).

This appeal followed.

**DISCUSSION**

Father contends that the juvenile court erred by terminating reunification services at the six-month review hearing because no substantial evidence supports the court's finding that DCFS offered or provided reasonable services. We review the reasonableness of DCFS's services for sufficiency of the evidence and uphold the judgment if there is substantial evidence supporting the juvenile court's finding that

5

DCFS provided reasonable services.  (*Amanda H. v. Superior Court* (2008) 166 Cal.App.4th 1340, 1345.)  Because a finding of reasonable services must be made by clear and convincing evidence in the trial court, " '[w]e review the record in the light most favorable to the trial court's order to determine whether there is substantial evidence from which a reasonable trier of fact could make the necessary findings *based on the clear and convincing evidence standard.*' "  (*T.J. v. Superior Court* (2018) 21 Cal.App.5th 1229, 1238–1240.)

When a child under the age of three is removed from a parent, family reunification services are initially provided for six months. (§ 361.5.)  At the six-month review hearing, if the court finds that the parent failed to participate regularly and make substantive progress in a court-ordered treatment plan, the court may end services and schedule a hearing for termination of parental rights under section 366.26 (§ 366.21, subd. (e)(3) & (8)), taking into account any particular barriers to the parent's ability to maintain contact with his or her child due to the parent's incarceration (§ 366.215).[3]

The court may not terminate reunification services without clear and convincing evidence that reasonable services have been provided or offered to the parent or legal guardian.  (§ 366.21, subd. (g)(1)(C)(ii); *Amanda H., supra,* 166 Cal.App.4th at p. 1345.)  Reunification services shall be extended if reasonable services have not been provided or there

---

[3] An order both terminating reunification services and setting a section 366.26 hearing must be challenged in the first instance by a petition for extraordinary writ review, given the interest in speedily resolving challenges to setting orders before a hearing for termination of parental rights occurs.  (§ 366.26, subd. (*l* )(1); *In re X.Z.* (2013) 221 Cal.App.4th 1243, 1248–1249.)  Here, however, the court did not order a section 366.26 hearing in conjunction with termination of Father's reunification services, thus his challenge to the underlying order is appropriate for us to consider on appeal.  (*In re Michael H.* (2014) 229 Cal.App.4th 1366, 1373 [" '[T]he general rule in juvenile dependency cases is that all orders (except for an order setting a section 366.26 hearing), starting chronologically with the dispositional order, are appealable *without limitation*' "].)

is a substantial probability that the child will be returned to the physical custody of the parent within six months.  (§§ 361.5, subd. (a)(3)(A); 366.21, subd. (e)(3).)  "The adequacy of reunification plans and the reasonableness of DCFS's efforts are judged according to the circumstances of each case," and DCFS must make good faith efforts to develop and implement a family reunification plan, including offering services designed to remedy the problems leading to lack of custody, "maintain[ing] reasonable contact with the parents during the service plan," and making "reasonable efforts to assist the parents in areas where compliance prove[s] difficult." (*Amanda H., supra,* 166 Cal.App.4th at p. 1345; accord, *In re M.F.* (2019) 32 Cal.App.5th 1, 14.)

"Reunification services need not be perfect." (*In re Alvin R.* (2003) 108 Cal.App.4th 962, 972.)  "The standard is not whether the services provided were the best that might be provided in an ideal world, but whether the services were reasonable under the circumstances." (*Melinda K. v. Superior Court* (2004) 116 Cal.App.4th 1147, 1159.)  "[T]he mere fact that more services could have been provided does not render the Department's efforts unreasonable." (*In re Alvin R.,* at p. 973.)  Reunification services should be tailored to each family's specific needs and circumstances and, to the extent there are obstacles to the provision of reunification services, at least some effort must be made to overcome those obstacles. (*Id.* at pp. 972–973.)

Father contends that DCFS never offered or provided him services during the six-month period between July 2020 and February 2021.  However, the evidence shows that DCFS made repeated efforts to contact Father by mail and by phone, and sent him the case plan, service referrals, and requests for updates, with no response.  And, although the COVID-19 pandemic limited the availability of some services and in-person visitation, the primary obstacle to Father's participation in services and to DCFS's ability to visit or communicate with him during the reunification period appears to be his own behavior while incarcerated.  Specifically, the same month that services were ordered, July 2020, Father was placed into disciplinary housing that prevented him from participating in any groups, even though his facility thereafter was permitting small groups of eight inmates to

7

meet, as Officer Blue explained to DCFS in September 2020. "By his own actions, [Father] thus placed himself out of the reach of any meaningful rehabilitative services which the Department could have provided." (*Elijah R. v. Superior Court* (1998) 66 Cal.App.4th 965, 971; *In re Lauren Z.* (2008) 158 Cal.App.4th 1102, 1111.)

Father also complains that DCFS provided him no communication with N.C. However, the juvenile court's order permitted Father weekly phone calls only "if consistent with the rules of the facility he is in." Officer Blue confirmed that inmates were ordinarily permitted to have in-person visits and make collect telephone calls, but that due to Father's disciplinary sanction he was unable to use his privileges. Again, Father's own actions precluded him from phone contact with N.C., not any failure by DCFS to provide such opportunity.

In addition to pursuing communication with Father by phone and mail, DCFS made some efforts to overcome the obstacles posed by Father's incarceration and behavioral restrictions. The DCFS worker asked Father's facility in September 2020 if she could visit him, but was informed that Father was prohibited from having visits from anyone but his attorney due to his disciplinary sanction. DCFS also sent a letter in November 2020 requesting that Father be allowed to participate in services because they were court ordered. There is substantial evidence to support the juvenile court's finding that these were reasonable, albeit minimal, efforts under the circumstances, given that Father never responded to any DCFS communication during the reunification period, expressed little discernable interest in pursuing services for himself or in the ongoing dependency proceedings of either of his children, and DCFS was aware that Father's privileges were restricted for disciplinary reasons.

We conclude the evidence, viewed in the light most favorable to the juvenile court's ruling, provides substantial support for the court's finding that DCFS offered or provided reasonable services to Father under the circumstances, and that the court did not err in terminating services. Given his behavioral restrictions during the reunification

8

period and complete lack of engagement with any court-ordered services either before or during his incarceration and the COVID-19 pandemic, Father's complaints that DCFS should have done more do not persuade us otherwise. DCFS is not obligated to provide the best services possible in an ideal world, but only those that are reasonable under all the circumstances. (*In re Julie M.* (1999) 69 Cal.App.4th 41, 48.) Substantial evidence supports the juvenile court's finding that DCFS proved by clear and convincing evidence that it made reasonable efforts to offer services to Father with regard to N.C., and that he failed to participate in his reunification case plan.

### DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.


LUI, P. J.

We concur:


ASHMANN-GERST, J.


HOFFSTADT, J.

9