Filed 4/13/26 (see dissenting opinion)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
|    Plaintiff and Respondent, | G063841 |
|       v. | (Super. Ct. No. 15CF0429) |
| JOSE GERARDO ESPIRITU, | O P I N I O N |
|    Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Michael A. Leversen, Judge. Reversed and remanded. Request for judicial notice. Denied.

Justin Behravesh, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Robin Urbanski and Donald W. Ostertag, Deputy Attorneys General, for Plaintiff and Respondent.

Sentenced to almost three decades in prison after a jury convicted him of various sexual assault crimes against a minor, defendant Jose Gerardo Espiritu appeals from the ensuing judgment. His sole argument on appeal concerns the jury selection process, during which defense counsel objected under Code of Civil Procedure section 231.7 to the prosecutor's exercise of a peremptory challenge against someone who identified themselves as a nurse.[1] The trial court overruled the objection, which Espiritu contends was error because the reason given by the prosecutor—that the prospective juror was a nurse—was presumptively invalid under subdivision (e)(10) of section 231.7 and the presumption was not overcome.

Because Espiritu's counsel did not raise the potential presumptive invalidity below, the primary question we must decide is whether the issue is forfeited. We conclude it was not. There is no indication in the record the trial court even considered whether the prosecutor's stated reason was potentially subject to a presumption of invalidity. Finding forfeiture under such circumstances would run counter to the comprehensive scheme adopted by the Legislature and the purpose underlying it. Part and parcel of a trial court's obligation to evaluate proffered reasons for the exercise of a peremptory challenge is to first make a meaningful inquiry into whether any of the proffered reasons may be presumptively invalid, ensuring the record reflects its process. Because the court in this case failed to take that critical, legislatively mandated step, we must reverse the judgment and remand the matter for a new trial.

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise stated.

## FACTS

### I.

### THE CHARGES

In March 2015, Espiritu was arrested and charged with committing various sexual crimes against a 16-year-old girl. A few days after his initial arraignment, he was released on bail. An amended information charged him with forcible rape (Pen. Code, § 261, subd. (a)(2)), forcible copulation of a minor 14 years old or older (*id.*, § 288a, subd. (c)(2)(C)), and sodomy, by force, of a minor 14 years old or older (*id.*, § 286, subd. (c)(2)(C)). It further alleged the victim of the forcible rape was a minor 14 years old or older, and all the offenses were not probation eligible.

After pleading not guilty and being held to the charges following a preliminary hearing, Espiritu failed to appear for an arraignment on amended charges and the trial court issued a bench warrant. Approximately six and a half years later, the United States Marshal Service delivered Espiritu to local law enforcement at Los Angeles International Airport and criminal proceedings against him resumed.

### II.

### JURY SELECTION

During jury selection, the court asked questions to prospective jurors and then turned questioning over to the prosecution and defense counsel. One of the jurors questioned was Prospective Juror Number 183 (PJ183). The questioning came after defense counsel exercised peremptory challenges against seven jurors and the prosecutor did the same against three jurors, all without objection from the other side.

During preliminary questioning by the court, PJ183 stated she was not married, had no children, and had a bachelor's degree in nursing.

3

Because she was a newly graduated nurse, she was "not quite working in nursing [yet]," but was working in health care. She indicated her spouse was also a newly graduated nurse.

Regarding experiences with law enforcement, she explained her father was convicted of murder related charges when she was 13 years old and sentenced to life in prison. She said she talks with him on a weekly basis and he expressed to her feeling "he was mistreated and that his trial wasn't fair for him." When asked by the court if she could nevertheless be a fair and impartial juror, she responded, "I think that I could handle it." Defense counsel later further inquired on the topic. PJ183 confirmed she would look at and analyze the evidence in a fair and impartial manner, and she stated she did not think she had any prejudices or biases vis-à-vis the prosecution or defense counsel that would impact her ability to do so. She confirmed the same in response to questions from the prosecutor.

The only other line of questioning directed to PJ183 came from the prosecutor. Specifically, the prosecutor inquired about her mention of nursing. PJ183 explained she graduated in October and "hopefully [would] be starting in March" with "medical surgical, basic nursing." She said she was not currently working in a hospital but instead was working in admissions in a medical office. When asked whether sexual assault exams were discussed in nursing school, PJ183 said they were "but not in detail." She confirmed never having performed one or seen one performed. In addition, she confirmed she was familiar with human anatomy and "the way things are supposed to be and when they don't look the way they are supposed to be[.]"

After the prosecutor asked a couple of questions to two other jurors, the court, outside the presence of the prospective jurors, inquired about challenges for cause and peremptory challenges. Defense counsel and

4

the prosecutor agreed on one cause challenge. The prosecutor then exercised a peremptory challenge to excuse PJ183. Defense counsel objected and the following exchange took place:

"[Defense Counsel]: I would—dang. I didn't bring my thing to have the Penal Code section --

"[Prosecutor]: CCP 231.7.

"The Court: Code of Civil Procedure.

"[Defense Counsel]: Yes.

"[Prosecutor]: Reason I'm kicking her is because she is a nurse.

"[Defense Counsel]: So I would make my record for I guess— kicking her because she is a nurse. For me, 187 [*sic*] based on the fact that she has a close loved one who is incarcerated and is doing life. She did say she could be fair and impartial and understand the importance of having a fair and impartial jury to weigh the evidence.

"The Court: Well, his stated grounds is all I'm going on[.] [S]he stated grounds, medical professional through the entire voir dire process. I believe that to be true. [¶] Do you have any recollection of a medical professional that wasn't released?

"[Defense Counsel]: I guess it depends on what he is considering a medical professional because we do have [Prospective] Juror Number 114 who is an occupational therapist.

"The Court: That's a little different. [¶] All right. I will grant your preempt. Your record was made."

After defense counsel exercised one additional peremptory challenge, a jury and alternates were sworn.

5

## III.

### CONVICTION AND JUDGMENT

The jury found Espiritu guilty on all counts and found true the age related allegation linked to the forcible rape count. Espiritu waived his right to a jury trial on the alleged vulnerable victim and position of trust aggravating factors. After taking evidence and hearing the parties' arguments, the court found the aggravating factors to be true beyond a reasonable doubt. The court sentenced Espiritu to the middle term on each count, for a total determinate term of 26 years in prison.

Espiritu timely appealed.

### DISCUSSION

Espiritu's sole argument on appeal concerns the trial court's overruling of his objection to the prosecution's exercise of a peremptory challenge against PJ183. He argues the reason given by the prosecutor for exercising the challenge is presumptively invalid under subdivision (e)(10) of section 231.7 because nursing is a field disproportionately occupied by women. So his argument goes, the trial court failed to identify it as such and the prosecutor made no attempt to meet its burden to overcome the presumption, meaning the trial court was required to sustain his objection and its error in failing to do so requires reversal. The Attorney General argues Espiritu forfeited his right to argue about the presumptive invalidity of the prosecutor's reason by failing to make the argument below. We find no forfeiture and conclude the trial court erred.[2]

---

[2] Because we find no forfeiture, we do not address Espiritu's alternative argument, that his trial counsel provided ineffective assistance by failing to expressly identify the presumptive invalidity of the prosecutor's stated reason for the peremptory challenge.

6

# I.

## SECTION 231.7, GENERALLY

Section 231.7, subdivision (a), prohibits the use of "a peremptory challenge to remove a prospective juror on the basis of the prospective juror's race, ethnicity, gender, gender identity, sexual orientation, national origin, or religious affiliation, or the perceived membership of the prospective juror in any of those groups."

The statute specifies the process that must be followed if a party or the trial court objects to the use of a peremptory challenge. First, "the party exercising the peremptory challenge shall state the reasons the peremptory challenge has been exercised." (§ 231.7, subd. (c).) Second, the trial court determines whether any of the provided reasons is presumptively invalid, and, if so, whether the presumption is overcome under the circumstances. (*Id.*, subds. (e) & (g).) Third, if there is no presumption of invalidity or any presumption is overcome, the trial court "evaluate[s] the reasons actually given to justify the peremptory challenge in light of the totality of the circumstances." (*Id.*, subd. (d)(1).) "If the court determines there is a substantial likelihood that an objectively reasonable person would view race, ethnicity, gender, gender identity, sexual orientation, national origin, or religious affiliation, or perceived membership in any of those groups, as a factor in the use of the peremptory challenge, then the objection shall be sustained." (*Ibid.*) Because the statute is aimed at both targeted and unconscious bias, "an objectively reasonable person is aware that unconscious bias, in addition to purposeful discrimination, have resulted in the unfair exclusion of potential jurors in the State of California." (*Id.*, subd. (d)(2)(A).) In a similar vein, "[t]he court need not find purposeful discrimination to

7

sustain the objection." (*Id.*, subd. (d)(1).) When the trial court makes a ruling, it must "explain the reasons for its ruling on the record." (*Ibid.*)

Two different subdivisions of the statute provide lists of presumptively invalid reasons for exercising a peremptory challenge and specify the processes that must be followed if such reasons are asserted in a section 231.7 scenario. (*Id.*, subds. (e) & (g).) Relevant here, subdivision (e) lists 13 presumptively invalid reasons, one of which is "[e]mployment in a field that is disproportionately occupied by members [of a group] listed in subdivision (a) [of the statute] or that serves a population disproportionately comprised of members of a group or groups listed in subdivision (a)." (*Id.*, subd. (e)(10).) The party exercising the preemptory challenge may overcome the presumption by providing clear and convincing evidence showing: (1) "an objectively reasonable person would view the rationale as unrelated to a prospective juror's race, ethnicity, gender, gender identity, sexual orientation, national origin, or religious affiliation, or perceived membership in any of those groups"; and (2) "the reasons articulated bear on the prospective juror's ability to be fair and impartial in the case." (*Id.*, subd. (e).)

On appeal, we review the overruling of a section 231.7 objection de novo, "with the trial court's express factual findings reviewed for substantial evidence." (*Id.*, subd. (j).) We may only consider those reasons given by the party exercising the peremptory challenge and those factual findings expressly made by the trial court. (*Ibid.*) If we conclude the trial court erred by overruling an objection, "that error shall be deemed prejudicial, the judgment shall be reversed, and the case remanded for a new trial." (*Ibid.*)

## II.

### ANALYSIS

The Attorney General argues Espiritu's failure to raise the presumptively invalid argument below precludes him from raising the issue for the first time on appeal. It notes that because he failed to bring to the trial court's attention the employment-related presumptively invalid category, the record is devoid of any evidence to support his claim that nursing is a profession disproportionately occupied by women. Due to the allegedly inadequate record for review, the Attorney General urges us to establish the following rule: "where . . . a specific aspect of the appellate claim under section 231.7 requires factual development in the trial court—such as whether a prospective juror's specific employment is disproportionately occupied by a specific group of people—it is incumbent upon the objecting party to raise that issue in the trial court" or the issue will be deemed forfeited on appeal. We are not persuaded forfeiture applies under the circumstances.

The general forfeiture doctrine and its basic rationale is well-established. "'"'An appellate court will ordinarily not consider procedural defects or erroneous rulings, in connection with relief sought or defenses asserted, where an objection could have been, but was not, presented to the lower court by some appropriate method.'"'" (*People v. Saunders* (1993) 5 Cal.4th 580, 589–590.) "'"'In the hurry of the trial many things may be, and are, overlooked which would readily have been rectified had attention been called to them. [Thus,] [t]he law casts upon the party the duty of looking after his legal rights and of calling the judge's attention to any infringement of them. If any other rule were to obtain, the party would in most cases be careful to be silent as to his objections until it would be too late to obviate

9

them, and the result would be that few judgments would stand the test of an appeal.'"'" (*Id.* at p. 590.) Stated differently, the purpose of the doctrine is to avoid "unfair[ness] to the trial judge and to the adverse party" by "'"encourag[ing] a defendant to bring errors to the attention of the trial court, so that they may be corrected or avoided and a fair trial had."'" (*Ibid.*)

"Our Supreme Court has . . . cautioned, however, that the forfeiture doctrine is 'not automatic.'" (*In re L.C.* (2023) 90 Cal.App.5th 728, 738 (*L.C.*), citing *In re S.B.* (2004) 32 Cal.4th 1287, 1293.) Further, courts have recognized there are circumstances in which it should not apply. (See, e.g., *In re Sheena K.* (2007) 40 Cal.4th 875, 889 [pure question of law]; *In re S.B.*, at p. 1293 [important legal issue]; *In re Frank R.* (2011) 192 Cal.App.4th 532, 539 [conflict with due process].)

Here, we are not confronted with a situation in which a defendant failed to object at all under the applicable statute. It is undisputed and clear from the record that defense counsel objected under section 231.7 after the prosecutor exercised its peremptory challenge to excuse PJ183. Instead, we are faced with the question of whether the initial objection made by defense counsel was sufficient to preserve an argument alleging error based on a category of presumptively invalid reasons not brought to the trial court's attention by defense counsel. Under the circumstances, we find it was.

"As a doctrine of largely judicial creation [citation], forfeiture should not apply when it would be incompatible with the fundamental purposes of a statutory scheme." (*L.C., supra*, 90 Cal.App.5th at p. 738.)

Understanding the fundamental purposes of section 231.7 requires an understanding of peremptory challenges and the law applicable to peremptory challenge objections before section 231.7 took effect in 2022. (Stats. 2020, ch. 318.) "Unlike challenges for cause based on a juror's

10

incapacity, relationship to the parties, bias, or prejudice (see §§ 228, 229), peremptory challenges to excuse potential jurors were 'designed to be used "for any reason, or no reason at all."'" (*People v. Uriostegui* (2024) 101 Cal.App.5th 271, 277 (*Uriostegui*).) "Prior to January 1, 2022, trial courts examined peremptory challenges under the three-step inquiry established by *Batson v. Kentucky* (1986) 476 U.S. 79 [(*Batson*)], and *People v. Wheeler* (1978) 22 Cal.3d 258 (*Wheeler*), overruled in part in *Johnson v. California* (2005) 545 U.S. 162. . . . Under the prior three-step inquiry, the party objecting to a peremptory challenge had to first demonstrate a prima facie case of discriminatory purpose. [Citation.] The burden then shifted to the party exercising the peremptory challenge to provide a permissible, nondiscriminatory explanation. [Citation.] The third step required the trial court to decide if 'purposeful' discrimination motivated the peremptory challenge. [Citation.] Appellate courts reviewing rulings on [*Batson*/*Wheeler*] objections presumed that prosecutors properly used peremptory challenges." (*Id.* at pp. 277–278.)

Though some believed the *Batson*/*Wheeler* inquiry helped reduce overt intentional discrimination, many acknowledged it presented difficult and often impossible challenges for the courts, including determining an attorney's true motivation, which led to a general feeling that the process was not effective in combating purposeful discrimination. (See *People v. Harris* (2013) 57 Cal.4th 804, 865–866 (conc. opn. of Liu, J.); Page, *Batson's Blind-Spot: Unconscious Stereotyping and the Peremptory Challenge* (2005) 85 B.U. L.Rev. 155, 178–179 & fn. 102 [providing extensive list of scholarly and judicial criticism of *Batson*/*Wheeler* process].) In addition, courts and others acknowledged it "plainly fail[ed] to protect against—and likely facilitate[d]— implicit bias." (*People v. Bryant* (2019) 40 Cal.App.5th 525, 545 (conc. opn. of

11

Humes, P.J.); see also *Batson, supra*, 476 U.S. at pp. 106–107 (conc. opn. of Marshall, J.); Page, at pp. 160–161; Graffy et al., *First Twelve in the Box: Implicit Bias Driving the Peremptory Challenge to the Point of Extinction* (2024) 102 Or. L.Rev. 355, 377–378.)

Recognizing the shortcomings of *Batson/Wheeler*, the Legislature enacted section 231.7. (Stats. 2020, ch. 318, § 1(b); see *People v. Caparrotta* (2024) 103 Cal.App.5th 874, 895 (*Caparrotta*) [enactment of § 231.7 was response to perceived problems with *Batson/Wheeler* process].) In doing so, it expressed an intent "to put into place an effective procedure for eliminating the unfair exclusion of potential jurors based on race, ethnicity, gender, gender identity, sexual orientation, national origin, or religious affiliation, or perceived membership in any of those groups, through the exercise of peremptory challenges," whether resulting from conscious or unconscious bias. (Stats. 2020, ch. 318, § 1(a).) Among the procedural facets of the statute identified in the legislative history as "major provisions" or "primary changes" from then existing law are: (1) the trial court's own independent ability to object to the use of a peremptory challenge; (2) the lack of an initial prima facie showing requirement on the objecting party; (3) the requirement that the party exercising the peremptory challenge provide their reasons whenever an objection is made under the statute; (4) the mandated focus by the courts on only the reasons provided; and (5) the presumptive invalidity of certain reasons, which may only be overcome with a specified showing by the party exercising the peremptory challenge. (Assem. Floor Analysis, Conc. Sen. Amends. to Assem. Bill No. 3070 (2020–2021 Reg. Sess.) as amended Aug. 21, 2020, pp. 1 & 3–4.)

With this background in mind, we turn to the statutory language and the circumstances before us. Consistent with legislative intent, the

12

statute provides a comprehensive process for parties and courts to follow. Absent an objection initiated by the trial court, subdivision (b) of section 231.7 makes clear a party must object to the use of a peremptory challenge which it perceives to be prohibited by the statute in order to trigger review pursuant to it. Beyond that, the statutory language does not expressly impose any other obligation on the objecting party. All other expressly assigned obligations belong to the party exercising the peremptory challenge or the trial court. Specifically, the party exercising the challenge is charged with explaining its reason(s) and overcoming the presumptive invalidity of any reason. (*Id.*, subds. (c), (e), (g)(2).) And the court is tasked with evaluating the reasons using specified standards, ruling on the objection, explaining the reasons for its ruling on the record, and determining the proper outcome if it sustains the objection. (*Id.*, subds. (d)(1), (f), (g)(2), (h).) This overall assignment of obligations is consistent with the Legislature's intended move away from the burden shifting and largely deferential evaluation which existed under the *Batson*/*Wheeler* framework. (See *Caparrotta, supra*, 103 Cal.App.5th at p. 895 [through § 231.7, "Legislature hoped to overcome 'deficiencies' in the [*Batson*/*Wheeler*] process"].)

The Attorney General's forfeiture argument asks us to place on the objecting party the initial onus of raising the possibility of a presumptively invalid reason. Doing so would be inconsistent with the detailed process established by the Legislature and its purposeful shift away from an initial affirmative burden on the objecting party. After a responding party offers its reasons for exercising a peremptory challenge, the trial court is tasked with "evaluat[ing]" them "in light of the totality of the circumstances" to determine whether "there is a substantial likelihood that an objectively reasonable person would view [membership or perceived

13

membership in a listed group] as a factor in the use of the peremptory challenge." (§ 231.7, subd. (d).) Although not expressly stated in the statute, it logically flows from the established scheme that part of the evaluation is to first consider whether any of the reasons fall into a presumptively invalid category listed in subdivision (e) or subdivision (g) of section 231.7. (See *People v. Aguilar* (2026) 118 Cal.App.5th 1, 11 [rejecting forfeiture argument grounded in defense counsel's failure to make targeted objection specifically referring to presumptively invalid category]; *Caparrotta, supra*, 103 Cal.App.5th at p. 893 [after party objects under § 237.1, it is trial court's responsibility to apply correct procedure to decide whether to sustain objection].) Stated differently, the presumptively invalid categories embody circumstances in which the Legislature has declared the court must presume an objectively reasonable person would view membership or perceived membership in a listed group as a factor in the use of the peremptory challenge, unless the party exercising the challenge overcomes the presumption in the statutorily specified manner.

In considering whether any of the reasons fall into a presumptively invalid category, the court may find it helpful to ask the parties for their position on the issue. Regardless of whether it does so, it is incumbent on the court to make a record demonstrating a meaningful inquiry into whether any of the proffered reasons may be presumptively invalid. Although it may be well-advised for an objecting party to speak up and identify a potential presumptive invalidity notwithstanding a court's failure to consider the possibility, forfeiture does not follow from an objecting party's silence under such circumstances. The objecting party's initial objection

14

under this statute preserves the right to challenge the court's failure to consider the presumptively invalid categories.[3]

The Attorney General emphasizes that the presumptively invalid category identified by Espiritu on appeal may require factual development in the trial court beyond the mere circumstances of voir dire questions and answers. While that may be true, we do not agree it impacts the forfeiture analysis. By creating a comprehensive structure for evaluating the exercise of peremptory challenges and deeming the erroneous denial of an objection to be reversible per se (§ 231.7, subd. (j)), the Legislature emphasized the importance process plays in the evaluation. Here, nothing in the record demonstrates the trial court considered whether the reason offered by the prosecutor was presumptively invalid. That procedural failure requires reversal of the judgment and remand for a new trial.[4]

---

[3] We leave for another day whether an objecting party may forfeit an argument about presumptive invalidity in other circumstances, including, for example, by remaining silent or denying the applicability of any presumptively invalid category when expressly asked about such matters, or by failing to mention a particular category when presumptively invalid matters are being discussed. (See, e.g., *People v. Garcia* (2025) 115 Cal.App.5th 92, 106 (*Garcia*) [finding forfeiture where prosecutor proactively defended against presumptive invalidity and trial court expressly determined no presumption was implicated, but defense counsel did not object or argue otherwise].)

[4] The Attorney General does not challenge the constitutionality of any portion of section 231.7, including subdivision (j) which mandates automatic reversal and remand for a new trial when an appellate court determines an objection to a peremptory challenge was erroneously denied. Because failure to follow the correct process mandates reversal in this case, we do not reach the parties' dispute concerning whether the data offered by Espiritu on appeal, of which he requests we take judicial notice, is sufficient to establish that the nursing profession is disproportionately occupied by women. For the same reason, we deny Espiritu's request for judicial notice.

We find inapposite the two cases cited by the Attorney General in which a defendant was deemed to have forfeited a section 231.7 related argument. One did not involve any argument, in the trial court or on appeal, about a presumptively invalid category. (*People v. Hernandez* (2025) 115 Cal.App.5th 256, 267–268 [identifying objection in trial court as based on prospective juror's youth forfeits ability to argue peremptory challenge was wrongly exercised based on Hispanic ethnicity].) And while the other found forfeiture of an argument regarding presumptive invalidity, it did so in circumstances where the trial court expressly considered and determined none of the proffered reasons were presumptively invalid. (*Garcia, supra*, 115 Cal.App.5th at p. 106.) Put simply, neither of the cases involved a trial court's failure to consider whether the reasons given by the party exercising a peremptory challenge were potentially subject to a presumption of invalidity.

We recognize jury selection is a fluid and dynamic process in which all involved, including the trial court, receive a plethora of informational input from various sources and counsel is often faced with making quick strategic decisions. But the Legislature has made clear its intent to eliminate the exclusion of jurors based on purposeful discrimination and unconscious bias, and it has developed a comprehensive analytical framework for achieving that goal. The trial court and all counsel must take the steps necessary to ensure jury selection runs efficiently and smoothly without compromising the integrity of the process and the legislative aim of section 231.7.

## DISPOSITION

The judgment is reversed and the case is remanded for a new trial.


DELANEY, J.


I CONCUR:


SANCHEZ, J.

Moore, J., Dissenting.

On March 1, 2015, defendant Jose Gerardo Espiritu raped and sodomized a 16-year-old girl, causing injuries to her vagina and anus. The victim reported the crime the day it happened, and Espiritu's DNA was located on her breasts and genitals. Police arrested Espiritu that same day, and the victim's DNA was located on his penis.

After the victim testified at trial, a jury found Espiritu guilty of forcible rape, forcible copulation of a minor, and forcible sodomy of a minor. The trial court imposed a determinate sentence of 26 years in state prison.

I agree with the majority that the trial court committed an error by erroneously denying Espiritu's objection to the prosecutor's use of a peremptory challenge during jury selection. (See Code Civ. Proc., § 231.7.)[1] But under our state Constitution, that is not supposed to end our analysis, we are also supposed to determine whether the error was prejudicial:

"No judgment shall be set aside . . . unless, after an examination of the entire cause, including the evidence, *the court* shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (Cal. Const., art. VI, § 13, italics added.)

Here, if we analyzed for prejudice and determined that the trial court's error was <u>not</u> prejudicial, then the victim would not have to go through the shame and humiliation of testifying before another group of total strangers at a new trial. But under section 231.7, the Legislature does not allow us to fulfill our constitutionally required obligation:

"Should the appellate court determine that the objection [to the

---

[1] Further undesignated statutory references are to the Code of Civil Procedure.

1

peremptory challenge] was erroneously denied, that error *shall be deemed prejudicial*, the judgment shall be reversed, and the case remanded for a new trial." (§ 231.7, subd. (j), italics added.)

In short, I respectfully dissent because:

"The Legislature has neither the right, nor the power, to amend the California Constitution by statute." (*People v. Garcia* (2025) 114 Cal.App.5th 1154, 1167 (conc. opn. of Yegan, J.) review granted, Dec. 30, 2025, S293973; see also *People v. SanMiguel* (2024) 105 Cal.App.5th 880, 891–893, (conc. opn. of Yegan, J.) review granted, Dec. 18, 2024, S287786.)


MOORE, ACTING P. J.

2